## JAMES B. FRY v. ALEXANDER PLATT.

1. INDEFINITE RECEIPT; *Specific Performance, Not Enforced.* The plaintiff, James B. Fry, alleged in his petition in substance that the defendant, Alexander Platt, owned section 1, township 25, range 14, in Woodson county, Kansas, and that the defendant, through his duly-authorized agent, Thomas M. Eads, sold the same to the plaintiff for the sum of $3,200, payable as follows: $50 cash down; $1,066.66⅔ on the execution and delivery to the plaintiff of a good and sufficient warranty deed for the land; and the remainder in two equal payments, as follows: $1,066.66⅔ payable in one year from the date of the delivery of the deed, and $1,066.66⅔ payable in two years from the delivery of the deed; the deferred payments to be secured by notes and a mortgage on the real estate, to bear interest at the rate of 7 per cent. per annum from date. The plaintiff further alleged in his petition that he paid the first payment of $50. On the trial it was shown that Thomas M. Eads was the agent of the defendant for the sale of said land; that the plaintiff paid Eads the $50; and that Eads executed and delivered to the plaintiff the following receipt, to wit:

"YATES CENTER, Ks., June 13, 1883.

"Received of J. B. Fry fifty dollars, for part payment of purchase-money for sec. 1, T. 25, R. 14, Woodson county, Ks.

T. M. EADS, *Agent for Alex. Platt.*"

*Held,* That such receipt is not such a contract in writing within the statute of frauds as will authorize the specific enforcement of a contract on the part of the defendant to sell and convey to the plaintiff the above-described land, the receipt being indefinite and uncertain as to the consideration, and being indefinite and uncertain in other particulars.

2. AGENCY; *Land Contract, Not Enforced.* Where the owner of certain real estate gives authority to an agent to sell the same, and such agent, without the knowledge or consent of his principal, enters into a contract with a person who is a partner of the agent in the purchase and sale of such property to sell the property to such person, *held,* that such contract of purchase and sale will not be specifically enforced as against the owner of the land.

### Error from Woodson District Court.

THE opinion states the nature of the action, and the facts. Trial at the October Term, 1883, and judgment for defendant *Platt.* The plaintiff *Fry* brings the case here.

*W. H. Slavens,* and *J. H. Richards,* for plaintiff in error.

*John A. Bellatti,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by James B. Fry against Alexander Platt, to specifically enforce the performance of a contract alleged to have been entered into between the parties for the purchase and sale of a certain piece of land in Woodson county, Kansas. Judgment was rendered in favor of the defendant and against the plaintiff, and the plaintiff, as plaintiff in error, now brings the case to this court. The plaintiff's petition in the court below states in substance that the defendant owned section 1, township 25, range 14, in Woodson county, Kansas, and that through his duly-authorized agent, Thomas M. Eads, he sold the same to the plaintiff for the sum of $3,200, payable as follows: $50 cash down; $1,016.66⅔ on the execution and delivery to the plaintiff of a good and sufficient warranty deed for the land; and the remainder in two equal payments, as follows: $1,066.66⅔ payable in one year from the date of the delivery of the deed, and $1,066.66⅔ payable in two years from the delivery of the deed; the deferred payments to be secured by notes and a mortgage on the real estate, to bear interest at the rate of 7 per cent. per annum from date. The plaintiff further alleges in his petition that he paid the first payment of $50. To this petition the defendant filed a general denial, duly verified by affidavit. The real defense however of the defendant was and is, that no sufficient or valid contract was made or entered into between the parties within the statute of frauds. (Comp. Laws of 1879, ch. 43, §§ 5, 6.) The defendant, Platt, resides at Jacksonville, Illinois; the plaintiff, Fry, resides at Yates Center, Kansas; and so also does the supposed or alleged agent of the defendant, the said Thomas M. Eads. It is also an admitted fact in the case, that the defendant owned the above-described land. The plaintiff bases his claim for the specific performance of the alleged contract upon the following instruments in writing, to wit:

1.] "YATES CENTER, June 3, 1883.

"FRIEND PLATT—*Sir:* I have a chance to sell section one (1) of your land to a good man for five dollars per acre;

one-third in hand, balance in payments one and two years, with interest seven per cent. per annum. Please answer this by return mail, and I then will close the contract, if it meets your approbation; but let me hear at once from you, please.

`                                    ` T. M. EADS.

"P. S.—Send out your deed and have it recorded, for there is nothing on record here to show whose land it is.

`                                          ` T. M. E."

2.] `                        ` "JACKSONVILLE, ILL., June 7, 1883.

"FRIEND EADS: Yours of 3d at hand. I did not answer by return mail, because I had told another man that he could have it for five per acre, what he offered me, provided he let me know immediately, and as I have not yet heard from him, you can close that trade if your man chooses; if not, please let J. B. Fry know at once, as he has a man that will take it, so he says, on the same terms. His letters came in the same mail as yours. I will send the patents to the recorder, as I have found them. `               ` ALEX. PLATT."

3.] `                  ` "OFFICE OF JAS. B. FRY, REAL ESTATE AGENT,
`                          ` EAST SIDE OF SQUARE,
`                 ` YATES CENTER, KAS., June 8, 1883.

"MR. PLATT—*Sir:* Yours just received all right; the land is sold at five dollars per acre; one-third cash, balance one and two years at seven per cent. interest. Fry is with me in this sale, although I did not know he had written to you. He is only partner with me in the transaction. The sale is closed, and you may depend on it and send on your deeds to the recorder. `     ` Yours, `          ` T. M. EADS."

4.] `                        ` "JACKSONVILLE, ILL., June 13, 1883.

"MR. THOMAS EADS—*Sir:* As another party who had spoke for that land before you, and I had not got his answer until to-day, he takes all the land I have in Woodson county, and has made the first payment; so I could not very well go back on him; so please inform your man to that effect, and oblige. `                                ` ALEX. PLATT."

5.] `                        ` "YATES CENTER, KAS., June 13, 1882.

"Received of J. B. Fry fifty dollars, for part payment of purchase-money for sec. 1, T. 25, R. 14, Woodson county, Kas.

`              ` T. M. EADS, *Agent for Alex. Platt.*

[Indorsed:] "State of Kansas, Woodson county, ss. This instrument was filed on the 15th day of June, 1883, at 5:30 P. M.—W. A. BAILEY, *Register of Deeds.*"

All the foregoing letters sent by Eads to Platt, and received

by Eads from Platt, were shown to the plaintiff, Fry, at the times they were so sent and received by Eads.

We do not think that the plaintiff is entitled to a judgment for the specific performance of the contract alleged in the plaintiff's petition and attempted to be proved on the trial of the case. The supposed contract is not shown with sufficient certainty by the instruments upon which the plaintiff relies, to entitle him to any such judgment. We suppose it is now pretty well settled that no court will make a contract for parties; and we suppose it is also very well settled that greater certainty is required in a contract to authorize a decree for the specific enforcement of the contract than is required to authorize a party to maintain an action at law thereon. In order to maintain an action for the specific enforcement of a contract where the contract is required to be in writing by virtue of the provisions of the statute of frauds, it is required that the whole of the contract, with all its essentials, be in writing, and that its terms be definite and certain, or that they can be made definite and certain by reference to other instruments in writing, or by reference to extrinsic and existing facts which may be shown to the court. Now if any contract at all was made between the plaintiff and the defendant in the present case, it is certainly very uncertain what that contract is.

In the first place, we shall suppose that Eads was merely an agent of the defendant, as the plaintiff claims that he was, and that what he did he did simply for the defendant, as his agent, and that the correspondence between Eads and the defendant was simply a correspondence between a principal and his agent; and, viewing the case in this light, then the only evidence of the supposed contract between the plaintiff and the defendant, and the only instrument to which the plaintiff is privy, and the only instrument upon which he has any right to rely, is the receipt given by Eads to the plaintiff; and this receipt, as a contract, is certainly very indefinite and uncertain. The receipt says: "Received of J. B. Fry, $50, for part payment of purchase-money for sec. 1, T. 25,

5—32 KAS.

R. 14, Woodson Co., Kas." Now what was the total amount
of the purchase-money? How was it to be paid? To whom
was it to be paid? When was it to be paid? How was the
deferred payment or the deferred payments to be secured?
Was any interest to be paid, and if so, at what rate? Noth-
ing is shown with regard to these matters. The receipt is
entirely blank with reference to the consideration.

But suppose that the consideration were considered definite
and sufficient, and that at some future time it should be paid
or tendered: then what should be done? Should a deed be
executed for the land, or a release, or merely a receipt given
for the money? And if a deed should be executed, then what
kind of deed — a quitclaim deed, or a warranty deed? An
what should be the covenants in the deed? And how many?
And by whom should the deed be executed? The receipt is
signed by T. M. Eads, "agent for Alex. Platt." Now from
the oral testimony of Fry, it would seem that the words,
"agent for Alex. Platt," were added to the receipt at some
time after its execution. The receipt does not refer to the let-
ters of correspondence between Eads and Platt, nor does it
refer to any other instrument in writing, nor to any extrinsic
or existing fact which might make it more definite and certain.
But suppose we construe it in connection with the said letters:
then was there such a contract between the plaintiff and the
defendant as should be specifically enforced? Now the let-
ters do not show who the purchaser of the property was.
The defendant had a right to believe, down to the time when
he was informed that Eads had sold his land to the plaintiff,
that both Eads and the plaintiff were endeavoring to sell the
land to third persons, and that they were not intending that
one of them should sell the land to the other. Indeed, down
to that time the defendant had a right to believe that all the
correspondence between himself and Eads was simply a cor-
respondence between himself, as principal, and Eads, as his
agent, and not a correspondence between himself, as vendor,
and Eads, as the partner of the vendee, and virtually a vendee
himself.

But it appears however from the last letter from Eads to the defendant, and from the facts subsequently developed, that the plaintiff and Eads were partners not only in the sale of the land, but that they were also partners in the purchase thereof—that is, partners in the entire transaction. In Eads's last letter, he writes to the defendant that "Fry is with me in this sale;" "he is only partner with me in this transaction." And this letter was written on paper containing Fry's letter-heads, and was shown to Fry before it was sent. And the land was actually sold by Eads to his partner, Fry, the plaintiff in this action. The transaction, then, between Eads and Fry was not merely a sale of the defendant's land by one of his agents to another of his agents, each acting independently of the other, but it was a sale of his land by one of his agents to another person who was probably also his agent, and where the two agents, if they were both agents, were acting conjointly and as partners in the purchase and sale. But whether they were both agents, or not, makes no difference; for one of them was certainly an agent, and they were certainly partners of each other in the transaction and "only partners" "in the transaction." The transaction, therefore, was in fact one partner selling the property to another partner; one partner paying a portion of the purchase-money to the other partner; and one partner giving a receipt for such purchase-money to the other partner. And as they were partners, each virtually a vendee as well as a vendor, it was the same in effect as an agent selling his principal's property to himself and paying a part of the purchase-money to himself, and then giving himself a receipt therefor. Now such a transaction will not be sustained or upheld in equity. The supposed contract between the parties cannot therefore be upheld in the present case, for at least two reasons: (1) Its indefiniteness and the statute of frauds; (2) the sale was by an agent virtually to himself.

The fact that the supposed contract is indefinite and uncertain, and is one that should be in writing under the statute of frauds, is sufficient to defeat the action for specific performance.

(*Holmes v. Evans,* 48 Miss. 247; same case, 12 Am. Rep. 372; *Minturn v. Baylis,* 33 Cal. 129; *McGuire v. Stevens,* 2 Am. Rep. 649.)

Indeed, such indefiniteness and uncertainty in the contract, where the statute of frauds requires that the contract should be in writing, would probably defeat any action upon the contract. (*Atwood v. Cobb,* 26 Am. Dec. 657, 661, *et seq.,* and especially 668, 669; *Reid v. Kenworthy,* 25 Kas. 701; *Patmore v. Haggard,* 78 Ill. 607; *Riley v. Farnsworth,* 116 Mass. 223; *Jordan v. Deaton,* 23 Ark. 704; *Grafton v. Cummings,* 99 U. S. 100.)

Neither can the present action be maintained, for the reason that the transaction would seem to be simply that of an agent selling his principal's property to his partner, and virtually to himself, without the knowledge or consent of his principal. (1 Parsons on Contracts, p. 87; 1 Wait's Actions and Defenses, 245, 246, *et seq.,* and cases there cited; *Bain v. Brown,* 56 N. Y. 285.)

Also with respect to certain essential elements and incidents inherent in or connected with the action of specific performance, see 3 Pomeroy's Equity Jurisprudence, § 1405, and cases there cited.

The judgment of the court below will be affirmed.

HORTON, C. J., concurring.

HURD, J., not sitting.