HARLEY W. BRUNDIGE *et al.* v. JOHN D. BLAIR *et al.*

1. CONTRACT, *When Court May Rectify.* To authorize a court to rectify a contract, and insert other and additional terms and conditions therein, the proof must be full, strong and clear, and the facts shown beyond reasonable controversy.

2. SPECIFIC PERFORMANCE — *Action, When Maintained.* In order to maintain an action for the specific performance of a contract, required by the statute of frauds to be in writing, it is essential that

the whole contract, with all its terms and conditions made certain and definite, be in writing, or that they can be made definite and certain by reference to other written instruments, or by reference to extrinsic and existing facts, which may be shown to the court. (*Fry v. Platt*, 32 Kas. 62, cited, and followed.)

*Error from Brown District Court.*

THE case is fully stated in the opinion.

*C. W. Johnson*, and *Waggener, Martin & Orr*, for plaintiffs in error.

*Jas. Falloon*, for defendants in error other than Town Company.

Opinion by SIMPSON, C.: The facts are embodied in the special findings made by the trial court as follows:

"1. In the month of September, 1886, the Chicago, Kansas & Nebraska Town Company were the owners of three lots in the city of Horton, Brown county, Kansas, described as follows: Lots 5, 6, and 7, in block 10; and at said time they sold the said lots to William M. Wellcome and John D. Blair, who were then and have ever since been residents of Hiawatha, in said county. At the time of said sale, the said town company did not convey the said lots by deed, but executed a contract to convey the same to said purchasers in consideration of the payment of the sum of $400.

"2. Some time after the purchase of the said lots by the said Wellcome and Blair, they made an assignment on the back of said contract given them by the town company, whereby they assigned to one F. D. Krebs a one-third interest therein, and the said Krebs has ever since been the owner of a one-third interest in the said contract for a deed.

"3. The said town company has never executed a deed in pursuance of said contract, and the legal title to said lots before and since said purchase has remained in said company, and is in the town company at the present time, and upon said contract for a conveyance, before a deed is due from said town company, it is entitled to be paid a balance due on said purchase-price of $——, but the town company has been ready to convey said lots by deed upon payment of the unpaid purchase-money ever since the making of said contract.

"4. On the 12th day of May, 1887, the said F. D. Krebs, who was then engaged in a bank at Horton, Kansas, was the owner of a one-third interest in the contract for a deed, and was the duly authorized agent of John D. Blair and W. M. Wellcome for the sale thereof, and on the morning of said day, Alva C. Ricksecker, one of the plaintiffs and one of the copartners in a real-estate firm doing business as Brundige, Bear, & Ricksecker, at Horton, Kansas, went into the bank of the said Krebs at Horton, and asked Krebs if he would not sell the said lots. Krebs at first declined, but finally in said conversation he told Ricksecker that he would sell said lots for $1,100, $550 cash, and $550 in one year, secured by a note bearing 10 per cent. interest, and a mortgage upon said lots. Alva C. Ricksecker then asked Krebs if he would let him sell the said lots and hold said offer open for three or four days, and Krebs replied that he would give him one week for the sale of said lots upon said terms.

"5. Ricksecker then left said bank and was gone fifteen or twenty minutes, when he returned, and said to Krebs that they (meaning the firm of Brundige, Bear & Ricksecker) would take said lots upon the terms proposed by Krebs; and thereupon they paid to Krebs, by check and currency, the sum of $100 upon said purchase, which said $100 was thereupon by Krebs deposited in said bank to the credit of W. M. Wellcome, and which still remains to his credit upon the books of said bank. At the time of signing the said memorandum receipt, Krebs said that he would at once send for the deeds.

"6. At the time Ricksecker notified Krebs that he would take said lots, he produced and handed to Krebs to be signed, the written memorandum receipt referred to in plaintiff's petition, which is in words and figures as follows, to wit:

"'H. W. Brundige, S. E. Bear, A. C. Ricksecker.—Office of Brundige, Bear & Ricksecker, real estate, loan, insurance agents, and notaries public.—$100.—HORTON, KANSAS, May 12, 1887.— Received of Brundige, Bear & Ricksecker, one hundred dollars as part cash payment on purchase of lots five, six and seven, in block No. 10, situated in the city of Horton, Brown county, Kansas. Total purchase-price $1,100. Balance due $450 on delivery of papers. W. M. WELLCOME. By F. D. KREBS, *Agent*.'

(Indorsed:) "'STATE OF KANSAS, BROWN COUNTY, *ss*.—This instrument was filed for record on October 1, 1887, at 11 o'clock A.M., and duly recorded in book 31, on page 131.— M. G. HAM, Register. Fee, .25; pd. (Seal.)'

"The said Krebs thereupon took the said contract and hastily read that portion of the same which acknowledged the receipt of $100, and signed it without giving any further attention, and returned it to the said Ricksecker.

"7. The receipt was drawn upon a blank used in the office of the real-estate firm of Brundige, Bear & Ricksecker, and was filled out by some member of said firm in their office, and when Krebs was not present, and Krebs had no knowledge that such a memorandum contract had been prepared, or was going to be prepared, until it was handed to him for his signature, as aforesaid.

"8. Shortly after the said memorandum receipt or contract was signed, as aforesaid, Krebs notified John D. Blair and W. M. Wellcome of the sale of said lots, and the terms of said sale, and requested them to forward to him a deed conveying said lots to Brundige, Bear & Ricksecker; and within a few days, and before the 18th day of May, 1887, Krebs received back a warranty deed from William M. Wellcome and John D. Blair and their wives, conveying to the plaintiffs the lots in controversy, and the deed was kept by Krebs at the bank until the 21st day of May, 1887, when it was returned to Blair and Wellcome.

"9. From the 12th day of May, 1887, no demand was made of Krebs or any of these defendants for said deed, and no communication was had between Krebs and any of the plaintiffs in reference to consummating the said sale until on the 21st day of June, 1887, Ricksecker made inquiry of Krebs for the deed, and was informed by Krebs that he had sent it back. During all of said time the plaintiffs were depositing money and doing business with the bank of Horton, and some of them were in said bank nearly every day.

"10. On the morning of June 22, 1887, the plaintiffs made a tender of $450 to Krebs, and demanded a deed to the said lots, and stated that they were willing to execute a note and mortgage for the deferred payment, and were then told by Krebs that he had no deed for them. And thereafter, on the same day, the plaintiffs made a tender to the defendants, John D. Blair and W. M. Wellcome, of $450, but they refused to accept the same.

"11. On June 25, 1887, the plaintiffs, at Hiawatha, Kansas, tendered the defendant W. M. Wellcome $450 in gold, and told him they were ready to execute a note and mortgage at any time, for the deferred payment, and demanded the deeds to said lots, but W. M. Wellcome refused to accept said money and said note and mortgage, and to make said deed.

"12. On the 27th day of June, 1887, about two hours before the bringing of this suit, C. W. Johnson, the attorney

of the plaintiffs, made a tender to W. M. Wellcome of a note for $550, due in one year, and a mortgage to secure the same upon the lots in controversy, the said note and mortgage being executed by the plaintiffs herein, but the defendants have refused and still refuse to execute any deed to the plaintiffs for said lots.

"13. At the time this suit was brought, the plaintiffs deposited in court the note and mortgage as described in the last finding, and the same have remained on file in the custody of the clerk of this court since the bringing of said suit. And on the same day this cause was called for trial the plaintiffs tendered in open court to the defendants $450, and deposited the said sum with the clerk of this court.

"14. At the time of the conversation between Krebs and Ricksecker, on May 12, 1887, Ricksecker did not know who were the owners of said lots until the receipt was signed, when he ascertained that William M. Wellcome was to make the deed; and at no time during any of the negotiations between the parties was any mention made of the interest of F. D. Krebs, in the contract from the town company, and in the said transactions it was never agreed or understood that Krebs should join in the execution of a deed to the plaintiffs, nor was John D. Blair mentioned in the oral agreement on May 12, nor until a deed was demanded and refused. No agreement was made between any of the parties hereto as to when or how the title from the Horton Town Company should be obtained.

"15. The wives of the defendants never had any part in the contract between plaintiffs and defendants relating to the sale of the lots, and they have never had anything to do in said transactions except as referred to in the eighth finding.

"16. On the 12th day of May, 1887, the said lots were vacant and unimproved, and have so remained ever since. The plaintiffs did not act toward taking possession thereof, except that shortly after the commencement of this suit they put up "For Sale" notices thereon. The defendants paid the taxes on the lots for 1887.

"17. On the 12th day of April, 1887, real estate was and for some months prior thereto had been rapidly advancing in value in the city of Horton, and continued to advance in value until the present time; but the market value of the said lots on the 21st day of June and since is not shown by the evidence.

"18. Shortly after the demand was made of the defendants

for a deed, F. D. Krebs requested one of the plaintiffs to call at the bank and get the $100 paid on the lots, but plaintiffs have never received back the money."

"CONCLUSIONS OF LAW.

"Time being of the essence of the contract, and the plaintiffs having failed to perform their part of the agreement within the time limited for the sale of said real estate, they ought not to have a reformation of the contract, nor specific performance, and the defendants should recover their costs herein."

Judgment accordingly for defendants, at the February term, 1888. The plaintiffs bring the case here for review.

The theory upon which this action was probably instituted was, that as the contract of the 12th day of May made between Ricksecker and Krebs could not be enforced under the statute of frauds, the receipt for $100 could be so reformed as to embrace all the terms and conditions of the sale, and then specific performance would be decreed. The plaintiffs in error, who commenced this action below, have never asked that the verbal contract be enforced; the prayer of their petition is that the memorandum receipt be reformed and then enforced. In the nature of things the first question is, ought the contract to be reformed? The trial court refused to decree a reformation, or speaking with greater legal precision, a rectification. This is equivalent to a finding of fact against the plaintiffs in error on that question, and in this particular case, in view of the conflict in the evidence, and all the other considerations so often enumerated, will not be disturbed. Special findings of fact numbered six and seven state the circumstances under which the receipt was signed, and seem to us to authorize the conclusion of the trial court not to reform the contract in accordance with the claim of the plaintiffs in error.

It has been laid down by text-writers, by Story in his Equity Jurisprudence, and by courts of last resort, that before a court can decree a rectification, the evidence must be "strong and plain;" (Wharton, § 208.) "That the error should be proved beyond reasonable doubt;" (Story Eq. Jur., 12th ed., § 157, citing 44 Me. 206; 45 Vt. 87; 107 Mass. 290; *Edmonds'*

*Appeal*, 59 Pa. St. 220; 35 Md. 382; 9 Ind. 126; 47 Ill. 170.) "The proof must be full, clear and decisive;" (Bishop, § 708, citing in addition to those cited by Story, 131 Mass. 316; 12 Heisk. 28; 55 Ala. 517, 548; 1 Stew. Eq. 85, 110; 10 id., 476.) It is also said by Bishop, "That mere preponderance of evidence is not enough; the mistake must appear beyond reasonable controversy;" citing 27 Ohio St. 84; 63 Ala. 488.

The trial court might have very properly stopped with a refusal to reform the contract, but it gave as an additional reason for its decree against specific performance, that time was of the essence of the original contract, and performance was not had or tender made within the week. This conclusion we do not assent to, but in addition to what has already been said about the failure of proof to compel rectification, we are confronted with the requirements of the statute of frauds in contracts of this character. The effect of the special findings of the trial court is, that Krebs at the time of the execution of the receipt, intended to sign only an acknowledgment of the payment for one hundred dollars. But put it in the strongest view that can be taken in favor of the plaintiffs in error, and then we have a contract for the sale of the lots, signed by the party that is to be charged, that does not contain all the terms and conditions of a sale, but shows affirmatively on its face that there are other terms and conditions that must of necessity exist to make the contract complete. In the case of *Fry v. Platt*, 32 Kas. 62, VALENTINE, J., says:

"In order to maintain an action for the specific performance of a contract, where the contract is required to be in writing by virtue of the provisions of the statute of frauds, it is required that the whole contract, with all its essentials, be in writing, and that its terms be definite and certain, or that they can be made definite and certain by reference to other instruments in writing, or by reference to extrinsic and existing facts which may be shown to the court."

It seems, therefore, that if we accept the receipt as embodying a part of the terms and conditions of sale, it is so indefinite and uncertain as to when and how the residue of the purchase-

money is to be paid, that specific performance could not be decreed.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.