Decided 15.August, 1901.

## CATTERLIN v. BUSH.

[ 59 Pac. 706 ; 65 Pac. 1064.]

APPEAL—RETROACTIVE STATUTE.

1. The act of February 22, 1899, (Laws, 1899,·p. 227,) amending Hill's Ann. Laws, ₰ 541, relating to the time and manner of taking appeals to the supreme court, may be construed to be either prospective or retroactive, but as the latter construction would deprive many parties litigant of the right of appeal, which is presumably valuable, the court prefers to infer that the legislature did not so intend, and the act in question is held applicable to only those cases that were appealed after it went into effect: *Judkins* v. *Taffe*, 21 Or. 89, distinguished.

MEMORANDUM OF SALE—STATUTE OF FRAUDS.

2. A memorandum of an agreement as to the sale of land : "Price, $6,000. C. pays note for $200. Deed to be special warranty, and C. pays for cablegrams. Money to be paid on or before 40 days. Possession when money paid and deed given to W.; farm 297 acres, more or less, as shown by deed. Abstract furnished;" is not a compliance with Hill's Ann. Laws, ₰ 785, subd. 6, requiring a memorandum of the sale of real property, for it is so vague, and uncertain as to be unintelligible.

ALLEGATIONS AND PROOFS MUST AGREE.

3. The proofs must always support the claims of the complaint and the plaintiff must recover on that theory or not at all.

From Marion : GEORGE H. BURNETT, Judge.

Action for damages by S. B. Catterlin against A. Bush, resulting in a judgment for defendant on the pleadings. Plaintiff gave notice of appeal and filed the undertaking required by law. At that time the law required that the transcript should be filed in the supreme court at the beginning of the next term. Before that time a new statute regulating appeals became effective (Laws, 1899, p. 227), providing that on the appeal being perfected the appellant shall file the transcript within thirty days thereafter. This not having been done, respondent moves to dismiss the appeal.

MOTION OVERRULED ; AFFIRMED.

Decided 15 January, 1900.

ON MOTION TO DISMISS APPEAL.

*Messrs. Geo. G. Bingham* and *John A. Carson* for the motion.

*Messrs. N. B. Knight* and *R. J. Fleming, contra.*

PER CURIAM.  1.  This is a motion to dismiss an appeal because the transcript was not filed in time.  The question involved is whether the act of February 22, 1899, amending section 541 of the Code (Laws, 1899, p. 227,) applies to appeals taken and perfected before it went into effect.  That it is within the power of the legislature to change and modify the statute relating to judicial procedure, so as to affect proceedings in pending causes, is unquestioned.  And legislative enactments which affect the mode of procedure only are often construed to so apply, unless the contrary appears, although there is some conflict in the authorities on this point : 23 Am. & Eng. Ency. Law (1 ed.), 450.  But the intention of the legislature, as gathered from the language used, must, of course, control.  If a statute is expressly made retroactive, or if its language is so broad as to include pending causes, or affect inchoate rights, it must be given force as such ; but, if it can be gathered from the language employed that the design was to make it prospective in its operation, it will be so construed.  The act under consideration is that, ''upon the appeal being perfected, the appellant shall, within thirty days thereafter, file with clerk of the appellate court a transcript,'' etc., ''and thereafter the appellate court shall have jurisdiction of the cause but not otherwise ;''  and this seems to indicate an intention to make such enactment applicable to future,

39 OR.— 32.

and not to past, appeals.    It will be observed that it does
not provide that the transcript in all appeals shall be filed
within a certain time after the appeal is perfected, as was
the case in *Judkins* v. *Taffe*, 21 Or. 89 (27 Pac. 221); but
that, "upon the appeal being perfected," the appellant
shall file the transcript within the time specified, which
may, in our opinion, be properly held to apply to future
appeals, and not to those already taken.    The statute is,
at least, open to this construction, and while, under the
technical rules of law, it might be considered retroactive,
we are not disposed to give it such a construction.    The
right to an appeal is a valuable one, and while it is purely
statutory, and may be modified, or perhaps entirely done
away with, by statute, a legislative intent to do so ought
not to be inferred from doubtful statutory provisions.
The motion to dismiss is therefore denied.

MOTION OVERRULED.

Decided 15 August, 1901.

ON THE MERITS.

For appellant there was a brief over the names of
*N. B. Knight* and *R. J. Fleming*, with an oral argument
by *Mr. Fleming*.

For respondent there was a brief and an oral argu-
ment by *Messrs. Geo. G. Bingham* and *John A. Carson*.

MR. JUSTICE WOLVERTON delivered the opinion.

The complaint herein states a cause of action, in brief,
as follows : That A. Bush is doing business under the
firm name of Ladd & Bush ; that about September 13,
1897, the defendant represented that he was the owner of
a farm commonly known as the " B. A. Wetzel Farm,"
located in section 16, township 8 south, range 2 west of
the Willamette Meridian, in Marion County, Oregon,

containing two hundred and ninety-seven acres, and the
hay then in the barn situate thereon, and, under the name
of Ladd & Bush, entered into a mutual agreement with
the plaintiff whereby he undertook and agreed to convey
said farm, including the summer fallow and the hay in
the barn, to such third person as plaintiff might desig-
nate, within forty days, and deliver to plaintiff a certain
note executed by his wife to the defendant for $200, and
to furnish plaintiff within a few days a complete abstract
of title to the premises; that, in consideration of defend-
ant's agreement, the plaintiff agreed to pay defendant
for said property the sum of $6,000; that plaintiff in-
formed defendant at the time, and it was mutually agreed,
that plaintiff should sell said premises and property to a
third person, as soon as said abstract of title should be
produced, at a price largely in excess of $6,000, and that
plaintiff agreed to pay for all cablegrams sent in consum-
mating the sale; that plaintiff paid defendant at the time
$20 as earnest money and as part of the purchase price,
and necessarily incurred an expense of $7.77 for cable-
grams; that on or about September 14, 1897, the plaintiff
sold said property to Florence P. McCarthy and Donald
P. McCarthy for the consideration of $9,000, to be paid
when the abstract was furnished and the deed executed
and delivered; that plaintiff so informed the defendant,
and that the balance of the purchase price, to wit, $5,980,
was ready to be paid; and that plaintiff has many times
within the forty days offered to pay the same, but that
defendant declined to accept it, and has neglected and
refused to deliver the abstract and deed, wherefore plain-
tiff has suffered damages in the sum of $3,227.77.

The answer puts in issue the material allegations of
the complaint, and sets up as a further defense, that at
the time mentioned the defendant employed the plaintiff
as a real estate agent or broker to procure a purchaser

within forty days for the interest owned by the defendant in the real property described, including the summer fallow and the hay in the barn, at and for the price of $6,000, payable in cash, and the defendant agreed to deliver to plaintiff, as his commission for his services, a certain note of $200 made by the wife of the plaintiff and another party to the defendant; that defendant then executed and delivered to plaintiff, at his request, a certain memorandum of the contract, of which the following is a copy, to wit:

"SALEM, Oregon, 13th Sept., '97:

"Price, $6,000 $\frac{00}{100}$. Mrs. Catterlin's note for $200.00. Deed to be a special warranty, and Mr. Catterlin pays for cablegrams. Summer fallow included. Money to be paid on or before forty days. Possession when money paid and deed given to B. A. Wetzel farm 297 acres, more or less, as shown by deed. Abstract furnished. Mr. Bush's hay in barn included.

"(Signed)      LADD & BUSH."

That plaintiff failed to procure a purchaser within forty days, and wholly failed to perform his part of said contract, and that this is the same agreement alluded to in the complaint. For a second defense, it is alleged that there is no such note or memorandum in existence of the agreement set up in the complaint concerning the land as is required by the statute of frauds. The reply admits that the memorandum as set out in the answer is the true and only one existing between the parties. Upon this state of the record, the defendant moved for a judgment on the pleadings, dismissing the action, which was allowed, and the plaintiff appeals.

2. The principal question presented by counsel is whether the writing set out in the pleadings, and admitted to be accurately exhibited thereby, is a sufficient note or memorandum of the agreement relied upon for

a recovery to fulfill the requirements of the statute of frauds. The· statute requires that, in case of an agreement for the sale of real property or any interest therein, there shall be some note or memorandum thereof in writing, expressing the consideration and subscribed by the party to be charged, and no evidence will be received of such agreement, other than the writing or secondary evidence of its contents: Hill's Ann. Laws, § 785. The memorandum and the contract or agreement are not to be confounded as one and the same thing. The memorandum is understood to be a note or minute informally made of the agreement, which may have but a verbal existence, expressing briefly the essential terms, and was never intended to stand as and 'for the agreement itself. The necessary elements are that it must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties. Mere formal or nonessential terms will be implied, but the elements necessary to a completed contract must be intelligently expressed, though ever so briefly: Browne, Stat. Frauds (4 ed.), § 371; *Scarritt* v. *St. John's M. E. Church,* 7 Mo. App. 174. Accordingly, it must show who are the contracting parties, intelligently identify the subject-matter involved, express the consideration, be signed by the party to be charged, and disclose the terms and conditions of the agreement: *Corbitt* v. *Salem Gaslight Co.* 6 Or. 405 (25 Am. Rep. 541); *Sherburne* v. *Shaw,* 1 N. H. 157 (8 Am. Dec. 47); *Gault* v. *Stormont,* 51 Mich. 636 (17 N.W. 214); *Clampet* v. *Bells,* 39 Minn. 272 (39 N.W. 495); *Williams* v. *Morris,* 95 U. S. 444; *Elliot* v. *Barrett,* 144 Mass. 256 (10 N. E. 820); *Grafton* v. *Cummings,* 99 U. S. 100; *Drake* v. *Seaman,* 97 N. Y. 230. Furthermore, the memorandum must not falsify the agreement set out by the complaint as the basis of the action, as the plaintiff

must produce such a writing as will tend to prove, not disprove, the existence of the alleged contract : Browne, Stat. Frauds (4 ed.), § 371*a*.    These rules will enable us to determine the efficacy of the memorandum involved here.    By its wording it is impossible to determine what the consideration for the alleged sale was,— whether $6,000 alone, or the Mrs. Catterlin note in addition.    The memorandum is just as susceptible of defendant's construction, that the $200 note constituted the consideration which Catterlin was to receive for making the sale for defendant as a broker, as that placed upon it by plaintiff, so that it can not be said that the consideration is expressed as interpreted by plaintiff.    It would take parol evidence to make such a stipulation as to the consideration out of it, as alleged, and this is not permissible. Again, the only reference made to the alleged vendee is this : "Mr. Catterlin pays for cablegrams."    Read with the context, this allusion to the plaintiff is amply as consistent with the theory that he was a broker as with the other, that he was a vendee, so that the writing is ambiguous in this particular as well.    These objections are not more serious, however, than the general one, which goes to the whole instrument, namely, that it is so vague, indefinite, and uncertain that it is impossible to determine what its true import is.    As has been indicated, it is just as susceptible of the construction that it is a memorandum of a contract with Catterlin as a real estate agent or broker as with him as a vendee, and the ambiguity is one that is patent upon the face of the instrument, and therefore not susceptible of explanation by parol.    For this reason alone, if for none other, it is manifestly insufficient : *Fry* v. *Platt*, 32 Kan. 62 (3 Pac. 781); *Minturn* v. *Baylis*, 33 Cal. 129.

3.    There is still another objection fatal to the admission of the memorandum in evidence.    It does not sup-

port the agreement set out in the complaint. .This is apparent from a comparison of the terms alleged with those supposed to be stated in the writing. It contains no allusion to the alleged fact that defendant agreed to convey to a third person, and it shows quite to the contrary of what is alleged touching the payment of expenses for cablegrams. No further comment is necessary.

4. The plaintiff insists that, as defendant admitted the existence of the memorandum in the answer, he was entitled to a trial as to what was the real contract between the parties. It is a sufficient answer to this to say that defendant does not admit that plaintiff is entitled to recover anything under any theory that might be adopted as to the transaction, and that the burden was with the plaintiff to make out his case ; hence, if the memorandum was of no legal service to him, he was not entitled to a further hearing. This also answers the plaintiff's contention that if the agreement was an option, merely, as alleged in the answer, he was entitled to the return of the $20, if paid. As suggested, plaintiff was proceeding upon a different theory, namely, that he was damaged by breach of an entirely different contract from the one set up in the answer ; and he must recover upon that theory, or not at all. Finding no error in the record, the judgment will be affirmed.        AFFIRMED.