Argued October 27, affirmed December 3, 1952, petition
for rehearing denied March 4, 1953

# RANDS *v.* EWING

250 P. 2d 921
253 P. 2d 908

*C. C. Proebstel,* of Pendleton, argued the cause and filed a brief for appellant.

*William G. Dick* argued the cause for respondent. On the brief were Dick & Dick, of The Dalles.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, and WARNER, Justices.

LATOURETTE, J.

This is an action for a breach of contract for the sale of real property wherein plaintiff recovered judgment against defendant in the sum of $4,500, from which judgment defendant appeals.

The first assignment of error is that, "The Court erred in denying the motion for a judgment on the pleadings."

Plaintiff alleges in his complaint that on or about June 2, 1950, plaintiff and defendant entered into a contract for the sale of the East one-half of Lots One (1) and Two (2), Block Seven (7), Ewing Addition to the city of Boardman, Morrow county, Oregon, whereby the defendant promised to sell the real property to the plaintiff for the sum of $2,400; that pursuant to said contract plaintiff promised and agreed to make a down payment of $200 and to pay the balance of $2,200 within one year from the aforementioned date; that plaintiff did make the down payment of $200, and during the month of March, 1951, plaintiff offered to pay to defendant the balance of $2,200, but that defendant refused to convey said premises to plaintiff and notified him that he would not perform said contract. It was further alleged that defendant offered to refund to plaintiff the down payment of $200.

In his answer defendant admits that he offered to convey to plaintiff his interest in the real property described in the complaint or to refund to plaintiff the $200 down payment; the remainder of the answer consists of general denials.

In a separate defense it is alleged in effect that defendant and his wife were the owners of the real property by the entireties, and that the defendant had never signed a contract binding him to make a convey-

ance of the property described. A second defense is pleaded to the effect that on the 2nd day of June, 1950, defendant made an offer to sell to plaintiff the real property described, subject to the approval of defendant's wife, but thereafter his wife refused to consent to the sale; that plaintiff gave to defendant $200 as earnest money for which defendant gave a receipt; that plaintiff had notice that defendant's wife had an interest in said property and that, in order for plaintiff to acquire the fee simple title in said property, it would be necessary to acquire the interest of defendant's wife and to secure her approval of the sale; that on or about December 11, 1950, the State Highway Commission commenced a suit to condemn a portion of the real property hereinbefore described; that such condemnation proceedings constituted an encumbrance on the title, and that because of the foregoing facts, the agreement became impossible of performance, and defendant was unable to convey the property.

Plaintiff joined issue by a reply generally denying the affirmative allegations of the answer, admitting, however, that the highway commission had started condemnation proceedings.

■ To sustain the first assignment of error, defendant relies on an evidentiary matter, i.e., that the receipt given by him to the plaintiff was not a contract but merely an option. The complaint does not specify whether the contract relied on was oral or written, and, therefore, it would not be amenable to a motion for judgment on the pleadings. In the case of *Smith v. Jackson,* 97 Or 479, 481, 192 P 412, an identical question was involved where in we said:

"* * * But in any event this section [the statute of frauds] cannot be taken advantage of upon a motion for judgment on the pleadings, where it

does not appear from the complaint or answer whether the contract relied upon by plaintiff was oral or in writing. Even if this fact appeared in the answer it would have to be admitted by the plaintiff before it could justify such judgment.''

■ Assignment of Error No. II is that the court erred in denying defendant's motion for nonsuit. It is urged that there was no contract in writing sufficient to take the case out of the statute of frauds, and that defendant merely offered to sell to plaintiff the real property, which offer was never unconditionally accepted by the plaintiff. Plaintiff gave testimony that the parties entered into an oral contract for the sale of the land in question as alleged in the complaint which, omitting the statute of frauds urged by defendant, was sufficient to constitute a legal contract between the parties. Plaintiff testified that pursuant to the agreement between them he paid to defendant $200, at which time defendant issued him the following receipt:

"June 2, 1950                                No.——
Received of R. B. Rands ........ two hundred no/100 Dollars For East ½ Lots 1 & 2 Block 7 Ewing Add. to City of Boardman

| Previous Balance | $2,400.00 |
| Amount Paid | $  200.00 |
| Balance Due | $2,200.00 |

By D. W. Ewing
To Be Paid within one Year.''

Plaintiff does not contend that the writing was the contract between the parties but was merely evidence of the same and was sufficient to take the case out of the statute of frauds. Section 2-909, OCLA, subparagraph 6, in part reads as follows:

"In the following cases the agreement is void unless the same or some note or memorandum

thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law:

"* * * * * *

"(6) An agreement * * * for the sale of real property, or of any interest therein;".

We have construed the above statute in many cases before this court, and in *The Oregon Home Builders v. Crowley,* 87 Or 517, 535, 170 P 718, 171 P 214, we said:

"The writing and the contract are not one and the same thing. While the statute makes certain agreements void and declares that no evidence, except a writing or secondary evidence of its contents, shall be available to prove such agreements, yet the statute of frauds has not added any new element to the contract itself. Whatever would be a good contract in the absence of the statute is a good contract in the presence of the statute; provided, only it is in writing and expresses the consideration. The same parties can agree upon the same terms for the same things that they could agree upon and contract for if there were no statute of frauds; but the statute simply requires the agreement and the consideration to be in writing. Broadly stated, a writing to satisfy the statute of frauds must show the contracting parties, intelligently identify the subject matter involved, disclose the terms and conditions of the agreement, express the consideration and be signed by the party to be charged: Catterlin v. Bush, 39 Or. 496, 501 (59 Pac. 706, 65 Pac. 1064)."

The memorandum or receipt hereinabove set out shows the contracting parties, identifies the subject matter, discloses the terms and conditions of the agreement, expresses the consideration and is signed by

Ewing, the person to be charged. There is no merit in the above assignment of error.

■ Assignment of Error No. III is that, ''The Court, * * * erred in failing to sustain the motion of the defendant to strike the testimony of the witness O. Larsen * * *.'' Witness Larsen was a representative of the marketing department of Standard Oil Co., having been employed by that company for a period of 30 years. He had had considerable experience in the acquisition of service stations, his particular duty being to negotiate leases. He testified, among other things, as follows:

''Q. In your opinion what is the market value of that property—what was the market value, I should say, on that date?

''* * * * * *

''A. * * * From $12,500 to $15,000.

''* * * * * *

''Q. Would you state upon what you base your opinion?

''A. Upon its potential earning capacity,—per gallonage point of view.

''Q. When you say 'per gallonage point of view' what do you mean there—

''MR. PROEBSTEL: Just a second before he answeres [sic] the question. I would like to make a motion to strike out the entire testimony of the witness on the grounds that the basis upon which he bases his value is based upon the potential earning capacity of something or other and that is too speculative.

''THE COURT: Overruled.''

After the objection was overruled, witness Larsen testified in detail concerning ''potential'' gallonage and how much profit a gasoline filling station would

make in a given period of time. There was no objection to this testimony nor was a motion made to strike the same. Therefore, if any error were committed in the failure of the court to strike the previous testimony of the witness, the same would be harmless, and even though it were conceded to be error to permit Larsen's answer as to potential value to stand, we do not believe it would be prejudicial since there was ample evidence in the case that the property in question was worth $13,000, and in our opinion the jury could not have been influenced by Larsen's testimony since its verdict was for only $4,500.

■ Following is Assignment of Error No. IV:

"The Court erred in giving the following instruction:

" 'The defendant has also set up the fact that the State Highway Commission took a portion of the premises described in the Complaint and therefore he was unable to give a merchantable title thereto. You are instructed that this is not a defense to this action.' "

Defendant saved the following exception to this instruction:

"The defendant excepts to the Court's giving the instruction that the condemnation proceedings instituted by the State of Oregon is not a defense to this action."

There is no error in the giving of the above instruction for the reason that the record discloses that the plaintiff notified the defendant that he was willing to accept a deed to the property involved excepting therefrom the premises subject to the condemnation proceedings.

The judgment of the lower court is affirmed.

*C. C. Proebstel,* of Pendleton, for the petition.

*Dick & Dick,* of The Dalles, for respondent.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK and BRAND, Justices.

## LATOURETTE, C. J.

Defendant's petition for rehearing raises a question which merits discussion. In our opinion we said that the court did not err in instructing the jury that the taking by the State Highway Commission of a portion of the premises described in the complaint was not a defense to the action because the record disclosed that the plaintiff was willing to accept the deed to the property, excluding the property condemned.

Petitioner urges that we are in error in the above because the reply in which the offer to accept was made was withdrawn at the trial. The record discloses that plaintiff here in the condemnation suit in which he was made a party defendant filed an answer wherein he evinced a willingness to accept the property not under condemnation with a demand for judgment against the highway commission for the value of the strip sought to be condemned. In his reply plaintiff in the present case reaffirmed the above offer. It appears from the record that such reply was withdrawn at the trial. This we overlooked and, further, were somewhat misled by plaintiff's counsel at the oral argument at which time he stated, according to our recollection, that plaintiff at all times was willing to accept the land, excluding the portion condemned.

The question now before us is what legal effect the condemnation of a portion of the land involved in the sale had on the contract between the parties.

The record is rather meager as to what course the condemnation proceedings took. The day the complaint was filed in the present case plaintiff withdrew his answer in the condemnation proceedings and a default was taken against him in that action. The record does not disclose what happened to the condemnation case thereafter; however, there is a strong suggestion from the evidence that defendant dealt independently with the highway commission and sold it the strip of land in controversy and received the purchase price therefor.

Since the record on this point is so obscure, we decline to discuss the question of the rights of a vendee where a sale to a condemning body is voluntary, but will assume for the purpose of this opinion that the strip of land involved was taken by condemnation.

The courts are divided on whether the risk, as it is called, will fall on the vendee or on the vendor in a case of condemnation effected after the execution of the contract; however, this matter has been put to rest in Oregon in the case of *Hill v. Doerfler,* 150 Or 628, 47 P2d 260. In that case, after the contract of sale was executed, Marion county condemned for road purposes a strip across a portion of the land contracted to be sold. The vendee sought rescission of the contract for that reason. We held that the vendee was not entitled to rescind because of such condemnation, such decision revolving around the principle of equitable conversion, i.e., that under an executory contract of sale the vendee is to be deemed the equitable owner of the property while the vendor holds legal title to the same in trust for the vendee and as security for the unpaid purchase price. We held that where eminent domain is invoked, the theory is that the forced sale provides full compensation, and the vendee, being considered as the

owner of the premises, is entitled to the full damage awarded and, therefore, does not suffer any loss since he is deemed to be fully compensated, and, if the vendor perchance should receive the award, he must hold the same as trustee for the vendee. We also said that a covenant of warranty is not breached when the right of eminent domain takes a portion of the property affected by the covenant.

We did not mean to imply, however, that a vendee would be obligated in every case to accept the award paid to the vendor where the vendee was not a party to the condemnation proceedings. There might be some instances where the award is less than the reasonable market value of the property taken, and, in the usual course of events, a party is entitled to his day in court; however, it is unnecessary to pass on this phase of the matter as the vendee was a party to the condemnation proceedings and a default was entered against him.

In the case of *Reife v. Osmers,* 252 NY 320, 169 NE 399, 67 ALR 1101, cited in *Hill v. Doerfler,* supra, plaintiff, who was the vendee, sought by action to recover from his vendor the amount of money he had paid under the contract to the vendor and expenses on account of the taking of a portion of the premises contracted to be sold by eminent domain. The court of appeals affirmed judgment in favor of defendant, basing its decision on the equitable conversion doctrine.

In the case of *Salvatore v. Fuscellaro,* 53 RI 271, 166 A 26, 27, it is said:

> "The initiation of condemnation proceedings with respect to property, subject to an executory contract of sale, does not relieve the vendor from the obligation of his contract. Clarke v. Long Island Realty Co., supra."

Turning to *Clarke v. Long Island Realty Co.*, 126 App Div 282, 283, 110 NYS 697, we find that the vendee sued the vendor to recover payments made under an executory contract where condemnation had been invoked. The court said:

"It is not necessary to cite authority for the familiar proposition that the vendee under an executory contract of purchase and sale has the equitable title, the vendor holding the legal title merely as security for the payment of the purchase money. The plaintiff's theory is that the contract was abrogated by the condemnation proceedings; but no authority is cited in support of that proposition, and no reason is urged or suggests itself to us for so holding. The contract is not abrogated." See *Summers v. Midland Co.*, 167 Minn 453, 209 NW 323, 46 ALR 816; also *Adlai E. Stevenson et al. v. Anna B. Loehr* (1871), 57 Ill 509, 11 Am Rep 36.

■■ Since the vendor may compel the vendee to accept title to the remaining property where condemnation is invoked, a fortiori, a vendee may compel a conveyance of title to the remaining property or obtain damages for the refusal of the vendor to perform, such refusal being predicated on condemnation. The record shows that defendant's failure to perform was based, as evidenced by his letter to plaintiff prior to the institution of these proceedings, on the refusal of his wife to join in a deed, and not on account of condemnation. It, therefore, follows that defendant could not successfully set up condemnation as a defense in the instant action against him for damages for breach of contract; consequently, the instruction given by the court was not error.

The other points urged in the petition for rehearing are without merit. Petition denied.