### CITY OF FORT WORTH v. ZANE CETTI, EXECUTOR.

#### Decided January 28, 1905.

**1.—Dedication of Streets—Acquiescence—Issue Raised.**

C. sold a tract of six acres lying within the limits of a city to P., reserving a vendor's lien thereon. P. laid off the tract into lots, blocks, streets and alleys, throwing the streets open to the public and selling lots fronting thereon, and this was done with the knowledge of C., who made no objection thereto. Afterwards C. foreclosed his lien, and at the foreclosure sale bought in the entire tract as originally sold, and, undertaking to disregard the dedication of the streets, brought suit against the city and a street-car company to recover the ground covered by one of the streets. Held, that evidence showing these facts was sufficient to raise the issue of a dedication of the street, and acquiescence therein by C., and it was error for the court to instruct a verdict in C's favor.

**2.—Same—Acceptance by City.**

The acts of the city in improving the streets and alleys, and laying water mains therein, manifested an acceptance such as would ripen into an indefeasible right if not legally interrupted in due time.

**3.—Same—Repudiation.**

The fact that, after the foreclosure sale, the city assessor and board of equalization, at the instance of C., accepted from him a rendition of the property as a solid block of six acres of land, did not conclusively show a repudiation by the city of the dedication of the streets, it not appearing that the power to repudiate was vested in those officers.

**4.—Same—Rights of Third Parties.**

A repudiation by the city of the dedication would not be conclusive upon the rights of parties who had purchased lots from P. on the strength of the dedication.

Appeal from the District Court of Tarrant. Tried below before Hon. Irby Dunklin.

*E. C. Orrick* and *Matlock, Miller & Dycus,* for appellants.—1. The assent of the owners of land to the use by the public of property may

be presumed from the public use, and the knowledge by such owner of the use. Missouri, etc., Ry. Co. v. Lee, 70 Texas, 499; Oswald v. Grenet, 22 Texas, 94; Richardson v. City of Dallas, 16 S. W. Rep., 622; McKey v. Village of Hyde Park, 134 U. S., 84, 33 Law Ed., 864; City of Cincinnati v. White, 6 Pet., 440; Barclay v. Howell, 6 Pet., 512; Duncomb v. Powers (Ia.), 39 N. W. Rep., 261; State v. Birmingham (Ia.), 38 N. W. Rep., 1210; Town of Marion v. Skillman (Ind.), 26 N. E. Rep., 677; Wilson v. Hall (Utah), 24 Pac. Rep., 799; Schwerdelt v. Placer Co. (Cal.), 41 Pac. Rep., 488; Hanger v. City of Des Moines (Ia.), 80 N. W. Rep., 549; Howard v. State (Ark.), 2 S. W. Rep., 333; Onstott v. Murray, 22 Iowa, 457.

2. That acceptance of taxes, by city, on the land will not estop the city from claiming land as a public street. La. Ice Co. v. New Orleans, etc., 9 So. Rep., 23; Ashland v. C. & N. W. Ry., 80 N. W. Rep., 1103; City of Frost v. Gillean, 61 S. W. Rep., 346.

3. The plaintiff, as the owner of land, knowing that it is claimed by the public as a highway, that it is traveled and worked as such, will be presumed to have assented to such use where, in addittion to such use and knowledge, it is shown that interveners have purchased property and made improvements with reference to such land as a public street. Cincinnati v. White, 6 Pet., 431; McKey v. Village of Hyde Park, 134 U. S., 33 L. E., 864; Wilson v. Hull, 24 Pac. Rep., 799; Whitaker v. Ferguson, 51 Pac. Rep., 981; Abbott v. Cottage City, 143 Mass., 525; Mason v. Sioux Falls, 51 N. W. Rep., 773.

*Sydney L. Samuels,* for appellee.—1. Before an owner can be deprived of his property by a claim of dedication, there must be some clear and unequivocal act on his part evidencing an intent to dedicate same. Mere passive acquiescence in the use of an unenclosed and unimproved lot in a town or city by the general public, who use the same as a highway or street, until such time as he, the owner, may be able and willing to improve the same, does not constitute a dedication. No one but the absolute owner can dedicate land to the public use so as to pass the fee unconditionally. Ramthun v. Halfman, 58 Texas, 551; De George v. Goosby (Texas), 76 S. W. Rep., 66; Worthington v. Wade, 82 Texas, 28; Railway Co. v. Montgomery, 85 Texas, 67; Cunningham v. San Saba County (Texas), 20 S. W. Rep., 941; McShane v. City of Moberly, 79 Mo., 42; Tucker v. Conrad, 103 Ind., 349; Moore v. City of Little Rock, 42 Ark., 67; Landis v. Hamilton, 77 Mo., 554; Illinois Ins. Co. v. Littlefield, 67 Ill., 373; Manrose v. Parker, 90 Ill., 585; Smith v. Inge, 80 Ala., 287; Dergen v. City of Lowell, 85 Mass., 400; Irwin v. Dixion, 9 Howard (U. S.), 30; Strong v. City of Brooklyn, 68 N. Y., 1; Goddard's Law of Easements (Bennett's Ed'n), 182.

2. To render a dedication, whether express or *in pais,* effectual, there must be both an intent of the owner to dedicate and the dedication must be accepted by the proper public authorities, and until met by public acceptance it is a mere offer which the owner is at liberty to withdraw. Gilder v. City of Brenham, 67 Texas, 347; City of Galveston v. Williams, 69 Texas, 449.

3. Acceptance of taxes estops city to claim property. Simplot v. City of Dubuque, 49 Iowa, 632; Smith v. City of Osage, 8 L. R. A., 635.

CONNER, CHIEF JUSTICE.—Mrs. Harriet E. Cetti, appellee's testatrix and mother, owned six and one-fourth acres of land situated in the city of Fort Worth, Texas, which she, acting by appellee, on January 2, 1890, sold to R. E. McAnulty, Thomas Roche and A. M. Carter for $30,000, one-fourth of which was paid in cash, and notes were given for the balance payable in one, two and three years with the vendor's lien on the premises sold to secure their payment. By mesne conveyance Drew Pruit, on March 14, 1890, purchased the land, as part of the consideration, assuming the payment of the first two notes to Mrs. Cetti. On March 19, 1890, Pruitt, having acquired other lands adjoining said six and one-fourth acres, joined with others owning adjacent lands, and laid out what was designated as the Grandview Addition to the city of Fort Worth, platting and subdividing the whole into blocks and lots, streets and alleys. A strip of sixty feet wide by 1026 feet long was designated as Seventh Avenue. This avenue covers 43 feet off of the east end of said Cetti tract. On January 10, 1894, default having been made in the payment of one or more of the promissory notes given to Mrs. Cetti, she brought suit in the District Court of Tarrant County against the makers of the notes and against Pruitt, who had assumed payment, as stated, and against J. P. Woods who had purchased one of the lots into which said six and one-fourth acres had been divided, abutting upon said Seventh Avenue, for the amount due on said notes and for a foreclosure of the vendor's lien on said six and one-fourth acres. Judgment was rendered in Cetti's favor March 14, 1894, for the balance due, with foreclosure of the vendor's lien as prayed for, and on May 4, 1894, an order of sale having issued, said land was sold and duly conveyed to Mrs. Cetti. In the petition for foreclosure and in the judgment in her favor, and in the sheriff's sale to her, the subdivisions made by Pruit, as stated, were disregarded, and the suit now before us was instituted by appellee, his mother having died in the meantime, on February 7, 1903, against the city of Fort Worth and the Northern Texas Traction Company, a private corporation, to recover that portion of Seventh Avenue taken from said six and one-fourth acres. Appellee's petition was in two counts, the first of which was in the ordinary form of trespass to try title. The second was in the nature of special pleadings in which were alleged the facts already stated, and it was also averred that the city of Fort Worth had never accepted the dedication, or attempted dedication, of Pruit, or if so, that such acceptance had afterwards been waived and abandoned, and that the dedication by Pruit was "obliterated and become void" by reason of the foreclosure judgment and sale stated. In March, 1903, and in January, 1904, numerous parties who had purchased lands out of the Grandview Addition, some of which abutted upon said Seventh Avenue, intervened and answered in substance that the land in question was a public highway, and by the dedication of Pruit had been set apart to public use as a street; that said dedication had been recognized and ratified by appellee and his testatrix; that the city of Fort Worth had recognized the strip of land in question as a public street, and that it was in fact such by its long continued use, interveners pleading the statutes of limitation of five and ten years. The city of Fort Worth adopted the pleadings of the interveners, setting up in substance the same defense. The trial was before a jury, and the court,

after the introduction of the evidence, gave a peremptory instruction to find for appellee, which was done, and judgment in appellee's favor accordingly rendered, hence this appeal.

Numerous assignments of error are presented, and the degree of learning and research manifested by counsel for the respective parties is not only commendable, but has also been of great assistance to us; but in our disposition of the case we shall devote ourselves principally to those assignments under which it is insisted on the one hand and denied on the other that the court was in error in giving a peremptory instruction, because the evidence was sufficient to raise the issues, (1) of an implied dedication on the part of appellee and his testatrix of the land in controversy as a street or highway of the city of Fort Worth. (2) That appellee and his testatrix have ratified the dedication made by Pruit; and (3) that the land in controversy has become a public highway, by reason of its continued and public use, under the statutes of limitation of five and ten years.

That streets, roads and highways may be established in any one or more of these ways has been so thoroughly settled that we need not stop to cite authorities. So that the duty devolved upon us is to determine from the evidence before us whether, as he insists, it conclusively appears that appellee's right or that of his testatrix to the land in controversy has not been lost, or whether on the contrary, as appellants insist, the evidence tends to establish their contention in any of the particulars indicated. The rule for our guidance in such determination is thus stated: "To authorize the court to take the question (in that case one of negligence) from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." (Lee v. International & G. N. Ry. Co., 89 Texas, 588.) Or, in different terms: "If there is any slight evidence tending to establish an issue, or bearing upon a controverted question in the case, it is the duty of the trial court to submit the issue thus raised to the jury." (Heatherly v. Little, 40 S. W. Rep., 445.) With such rule in mind we conclude that the court was in error, as assigned, in giving the peremptory instruction. Appellee testified: "I have been in Fort Worth constantly about thirty years. . . . In the sale of this property to Carter, McAnulty and Roche I represented my mother. All negotiations that led up to and ultimated in the sale of the property were conducted by me. I don't think any of them ever approached my mother. She gave me full authority to act for her in any matter connected with this sale and with the handling of these notes. She placed full reliance on her son, for which I feel grateful.

"At the time Drew Pruit made his dedication I was in the city. I don't think he talked with me at the time he made his purchase, but he did afterwards. He often addressed to me the inquiry whether I would not take the proceeds of his sales and release the liens, or cause Mrs. Cetti to release liens. On such occasions he may or may not have exhibited to me the map he made of these lots. I don't remember about the time he laid it off; I had general knowledge of it. I knew of it. . . . I expect he told me of the sale to Woods and the proposed sale to Tomlinson. . . . I don't remember when Mr. Pruit graded Pruit

Street. Possibly I saw it a month or two after it was graded. . . . I remember the street car track was on Seventh Avenue. I traveled the car out to Mistletoe Heights. . . . Pruit Street was a good street. That street has been open for travel ever since I first saw it. . . . From 1890 up to this time I have never placed on Pruit or Cooper Streets or Seventh Avenue any sign-board to the effect that these streets have been closed. Nor have I built a panel of fence, or any other obstruction, across these streets. A vendee of mine tried to, last year, but they stopped him. If I had seen the city laying the sewers there I would not have objected. I have no objection to their sanitary measures. . . . While this street car line was being operated on Seventh Avenue I did not at any time assent or dissent to taking these streets. The occupancy of the street car line on Seventh Avenue ceased with the judgment rendered.. . . . I can not say how often, on an average, I have ridden over that tract of land in view of these three streets since 1890, but I have been in the habit of taking carriage drives with my family and often go in that direction. We have been there often, and having an interest in this land it was natural for me to notice how the neighborhood was settling up. I have driven across the land in every direction.

"When this land was sold Pruit, Roche and McAnulty took the fence down. We moved the house. When I drove out to this part of the city, I noticed that these streets were all traveled. . . . I can't tell whether the interest falling due January 2, 1891, was paid at that time or shortly thereafter. As to the extension of times of payments on notes, there was more than one conversation about that. . . . When he asked extensions, a conference was had and the matter was referred to Mrs. Cetti. . . . I think first extension was six months. All through this transaction I acted for Mrs. Cetti with her full knowledge, referring to her attention any matter of vital importance for her sanction."

Drew Pruit, the purchaser from the vendees of Mrs. Cetti testified that he paid $6,000 cash for said land, and assumed the payment of notes as stated, and that Pruit Street, one of the streets bisecting Seventh Avenue at right angles, was graded and graveled at his "own expense, and he paid a part of the expense of grading Pennsylvania Avenue, on the north of this six and one-fourth acres. Pruit Street was graded from Eighth Avenue, across Seventh Avenue to Sixth Avenue. Pruit Street is a sixty-foot street, graded and graveled the full distance. It has been traveled as a public highway or street of the city, more or less, ever since it was graded and graveled up to the present time. I guess it was as well graveled as any street in Fort Worth. There has been no intermission in the travel on it up to the present time. There was a car line on Seventh Avenue. . . . It was built in 1890, or the next year. I never made any objection to the public use of Seventh Avenue between the time of my dedication and the time of the foreclosure of my title. Mr. Zane Cetti represented Mrs. Cetti. He held the notes. Mrs. Cetti was very old. I never had any dealings with her. Mr. Cetti granted, in writing, three extensions of the notes. She never repudiated any act of his in connection with this business. Shortly

after my purchase Drew Pruit sold five lots to Mr. Woods for $5,000, one-third down. Before any sales were made he saw plaintiff and told him about platting the ground, and that he was going to sell it right away. . . . Mr. Cetti knew the particular lots Mr. Pruit had sold Mr. Wood, and wanted to know the length and breadth of the lots he had sold. Pruit showed him the plat of the addition about the time the first or second note fell due, that is, in January, 1891, or 1892. The plat disclosed Seventh Avenue, Cooper and Pruit Streets. Wood could not raise the money to make the final payments on the lots, and no release was ever obtained from plaintiff, who had agreed to release the lots for a certain sum. Pruit also started to sell Tomlinson some lots on the corner of Seventh Avenue and Pruit Street, and Cetti agreed to make a release for a certain sum. Tomlinson demanded a written promise for a release, but Cetti declined to give anything but his word, which he said was as 'good as his bond.' This difference broke the trade and no release was made."

It was also shown by the undisputed testimony that the streets and alleys of Grandview Addition, including Pruit and Cooper Streets and Seventh Avenue, were by Pruit and others owning parts of the addition dedicated as such to public use by mapping, formal dedication, etc., in March, 1890, all of which were duly placed upon the proper records in the city of Fort Worth. W. H. Wade, D. A. Reeves and others testified to the general acceptance and reputation by and among the denizens of that part of the city of the streets named as public highways, and to travel thereon. It seems also undisputed that the sewers which bisected Seventh Avenue at right angles were laid by the city through the alleys as early as March, 1892, and that the city has maintained the same ever since.

In view of another trial it would manifestly be improper for us to discuss the weight of this testimony, and it would perhaps be sufficient to only add that in our judgment it tends to support one or more of the issues tendered by appellants, and that hence it was the right of appellants to have the jury pass thereon, notwithstanding the evidence of a contrary tendency. In view of the earnest contention of appellee, however, we will add that while true, as he insists, that the dedication of Pruit did not bar appellee's right, yet if with full knowledge thereof appellee acquiesced therein and ratified the same it would be as effective as if originally made by himself.

The Pruit dedication was absolute, subject of course to appellee's right, seasonably exercised, but there is nothing in the instrument of dedication or in the use of the street evidencing any recognition on the part of the city or of the public of appellee's superior right, and it can not be questioned but that open, continued use by the public, inconsistent with a superior right, and improvement by the city of the streets and alleys, not only manifest an acceptance, but will ripen into an indefeasible right if not legally interrupted. The mere fact that there was subsequently a foreclosure of the vendor's lien and a sale thereunder is not necessarily conclusive. Neither the city nor interveners were parties to the judgment of foreclosure, and if the public, as represented by them, theretofore began an adverse right, the judgment alone did not interrupt it as a matter of law. It was held by our Supreme Court in

the case of Thomson v. Weisman (11 Texas Ct. Rep., 136), that in a case where even the party against whom a judgment for land had been rendered remained in adverse possession, such possession would, if not otherwise interrupted, ripen into perfect title by limitation.. And this court, within a few days after the Supreme Court decision and before its publication, held, in effect, that a mere judgment for land did not as a matter of law interrupt the statute of limitations in favor of one whose adverse claim began before the judgment. (See Logan v. Robertson, 11 Texas Ct. Rep., 378.)

Appellee introduced evidence showing, or tending to show, that after the judgment of foreclosure the city at his instance assessed and received taxes on the six and one-fourth acres as a whole, and that on May 16, 1902, by ordinance adopted as the official map and plat of the city, one prepared by the city engineer upon which the six and one-fourth acres was described as Land L, a solid block, 269 feet wide and 1026 feet long, without streets or alleys, and this is relied upon as conclusively showing that the city repudiated the Pruit dedication. Appellants sought to explain all this testimony, as we think they should have been permitted to do, by proving on appellee's cross-examination and otherwise, that by the rendition of the land as a whole appellee was thereby enabled to escape increased taxation. The proof tends to show that it was so rendered and taxed upon appellee's contention and against the contention of the city assessor and board of equalization, though appellee was finally allowed to prevail. No power to repudiate is shown to have been invested in these officers of the city. No ordinances of the city specifically declaring a repudiation appears. And during this same time the evidence tends to show uninterrupted use of said streets, alleys and watermains. The city is now asserting right. In addition to all which the plat referred to plainly designated as an integral part of the city the Grandview Addition with its lots, streets, alleys, etc., as originally dedicated, save only that said six and one-fourth acres appeared as "Land L," as before stated.

We think it was for the jury to determine from all the evidence not only appellee's intention in so rendering and paying taxes, but also whether the acts of the city officers mentioned were intended as, and amounted to, a repudiation of the Pruit dedication. (See Getchel v. Benedict, 57 Iowa, 121; Leman v. Hayden, 13 Wis., 159; Wyman v. State, 13 Wis., 663; Elsworth v. Grand Rapids, 27 Mich., 250.) Moreover, the writer does not yet feel prepared to say that a repudiation on the part of the city is conclusive as against interveners and others who have, on the faith of the Pruit dedication and of appellee's ratification thereof, if any, bought property in the Grandview Addition. Mr. Elliott in his work on Roads and Streets, page 119, says: "It is always to be understood that the parties to a dedication may, by mutual agreement, revoke it in cases where the rights of third parties have not intervened. Where, however, third persons have acquired rights which would be impaired by a revocation, then the dedication is deemed irrevocable. It is not merely those who abut upon the particular highway that have a right to resist the revocation of a dedication, but the right may vest in others who own property on connecting highways, and who have acquired rights upon the faith of the dedication. If the acquisition of

such rights has been upon the faith of the continuance of the way, and in good faith and without negligence, then the parties to the dedication will be estopped from revoking it."

Other assignments will not be discussed, but in view of another trial we will say that we incline strongly to the opinion that the evidence specified in the eighth, tenth, eleventh, twelfth and thirteenth assignments was admissible as circumstances to be considered together with all other relevant evidence on some one or more of the issues tendered by appellants.

We conclude that the judgment must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*