## PROGRESSIVE LUMBER COMPANY v. MARSHALL & EAST TEXAS RAILWAY COMPANY.

### No. 2288.   Decided March 26, 1913.

**1.—Railway—Fire—Negligence—Condition of Right of Way—Charge.**

Evidence considered and held to support the submission to the jury of the issue of negligence on the part of a railway in permitting dry grass to accumulate on its right of way, by which fire set by a passing locomotive was communicated to plaintiff's property.  See, also, charge on such issue which it was held error to refuse.  (Pp. 13-16.)

**2.—Presumption.**

The rule that a presumption can not be based on a presumption is held inapplicable to mere links in a chain of circumstantial evidence.  (Pp. 16, 17.)

**3.—Evidence—Issue Not Submitted.**

The exclusion of evidence offered by plaintiff in disproof of a defense which though pleaded was not submitted as a ground for denying recovery is not available to him as cause for reversal.  (P. 17.)

**4.—Evidence—Exclusion—Bill of Exceptions.**

A bill of exceptions to the excluding of evidence does not require consideration of error assigned on such ruling where it does not show for what purpose the evidence was offered, nor the grounds of the objection made to it, nor the grounds on which the trial court excluded it.  (P. 17.)

**5.—Railway—Fire—Equipment of Engine—Choice of Devices.**

It is the duty of a railway company to use ordinary care to equip its engines "with the most approved spark arresters in use."  But it is not liable for an error in judgment in its choice, with due care, between different devices approved and in common use.  Charge on this subject criticised.  (Pp. 17, 18.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Upshur County.

The Progressive Lumber Company sued the Marshall & East Texas Railway Company.  Defendant had judgment.  Plaintiff appealed, and on affirmance obtained writ of error.

*Mell & Stephens, J. S. Barnwell, William Thompson, Geo. S. Wright,* and *Sam D. Snodgrass,* for plaintiff in error.—Where a railroad company permits dry grass to grow upon its right of way and sparks emitted from its engines set fire to such grass and such fire spreads to and injures the property of another, it is responsible for such injury, although the engine and spark arrester are of the most approved pattern and the engine is operated in the most skillful and careful manner. Gulf, C. & S. F. Ry. Co. v. Rowland, 23 S. W., 421; Gulf, C. & S. F. Ry. Co. v. Cusenberry, 26 S. W., 46; Gulf, C. & S. F. Ry. Co. v. Polk, 28 S. W., 354; International & G. N. Ry. Co. v. Newman, 40 S. W., 855; St. Louis S. W. Ry. Co. v. Connally, 93 S. W., 266.

Whenever there is any evidence tending to support a material issue, or where the evidence on an issue is of such a nature that reasonable minds might differ as to the effect of such evidence, it is the duty of the court to submit that issue to the jury. Heatherly v. Little, 40 S. W., 445; City of Fort Worth v. Cetti, 85 S. W., 827, 38 Texas Civ. App., 117.

It is true that a litigant may prove by circumstantial evidence every fact that he might prove by direct testimony, and even where each link in the chain of evidence raising an issue is proven by circumstantial evidence there is no building of one presumption upon another, such as is forbidden by law. San Antonio & A. P. Ry. Co. v. Adams Co., 66 S. W., 578; San Antonio & A. P. Ry. Co. v. Home Ins. Co., 70 S. W., 999; Gulf, C. & S. F. Ry. Co. v. Blakeney, 48 Texas Civ. App., 443.

It is the duty of a railway company to use ordinary care to equip its engines with the most approved spark arrester in general use by railway companies. Galveston, H. & S. A. Ry. v. Horne, 69 Texas, 646; Missouri, K. & T. Ry. v. Carter, 95 Texas, 461.

*Warren & Briggs* and *M. B. Templeton,* for defendant in error.— Where there is no evidence of any probative force, as to an issue pleaded, the court should not charge upon such issue. G., C. & S. F. Ry. Co. v. Cusenberry, 26 S. W., 43; Western U. Tel. Co. v. Kendzora, 77 Texas, 257; N. T. Traction Co. v. Jamison, 38 Texas Civ. App., 55; I. & G. N. Ry. Co. v. Simcock, 81 Texas, 503; F. W. & D. Ry. Co. v. Hogsett, 4 S. W., 365, 67 Texas, 685.

A bill of exception that does not show what the objection was, to the excluded testimony, should not be considered. Kolp v. Specht, 11 Texas Civ. App., 685; I. & G. N. Ry. Co. v. Jones, 60 S. W., 978; Johnson v. Crawl, 55 Texas, 571; Rule 57, District Court.

Where a bill of exception does not state the purpose of the testimony, the bill will not be considered. Edgar v. State, 129 S. W., 141.

MR. JUSTICE HAWKINS delivered the opinion of the court.

Appellant sued for damages in the sum of $25,000, alleging, substantially, that the fire which destroyed its planing mill and other property, situated near appellee's right of way, resulted from sparks negligently emitted from a locomotive of appellee, and that (1) said sparks fell upon appellant's property, setting it afire, or (2) said sparks fell upon and set fire to dry grass and other combustible substances which appellee had negligently permitted to encumber said right of way, whence the flames spread to said mill, etc.

The District Court charged the jury upon only the first alleged grounds of negligence. The verdict was in favor of the railway company and judgment accordingly was entered, and was affirmed by the Court of Civil Appeals.

Appellant's first assignment of error complains of the refusal of the trial court to give its requested special charge, which is as follows:

"Gentlemen of the Jury: You are instructed that, if you believe and find from the evidence that the defendant company negligently per-

mitted dry grass to grow and accumulate on and encumber defendant's right of way and track at a point west of the dry shed or planer shed of the plaintiff's property, and if you further find from the evidence that sparks of fire were emitted from one of defendant's engines and set fire to said grass, if any, on defendant's right of way and said fire spread to and consumed plaintiff's property, you will find for plaintiff, measuring his damages by the rule given you in the general charge herein."

Appellee practically concedes, and the Court of Civil Appeals held, as we do, that said requested charge should have been given to the jury if the evidence required submission of the issue which it was designed to present. Gulf, C. & S. F. Ry. Co. v. Cusenberry, 86 Texas, 532, 26 S. W., 43; Campbell, Receiver, v. Goodwin, 87 Texas, 273, 28 S. W., 273; Ft. Worth & D. C. Ry. Co. v. Hogsett, 67 Texas, 685; Ft. Worth & N. O. Ry. Co. v. Wallace, 74 Texas, 581; Texas & P. Ry. Co. v. Ross, 27 S. W., 728; Galveston, H. & S. A. Ry. Co. v. Polk, 28 S. W., 353; International & G. N. Ry. Co. v. Newman, 40 S. W., 854.

If the evidence bearing upon that issue which was favorable to the lumber company, discarding all that was favorable to the railway company, was sufficient to support a verdict in favor of the lumber company, had that issue been submitted to the jury, said requested charge should have been given. Lee v. International & G. N. R. Co., 89 Texas, 588, 36 S. W., 65; Choate v. Ry. Co., 90 Texas, 86; Eastham v. Hunter, 98 Texas, 560; Harpold v. Moss, 101 Texas, 541, 109 S. W., 928; Heatherly v. Little, 40 S. W., 445; City of Ft. Worth v. Cetti, 85 S. W., 826; Long v. Ry. Co., 85 S. W., 1048; Lamberida v. Barnum, 90 S. W., 698.

Among the undisputed facts are these:

Appellant's properties included a planer shed forty by sixty feet, and adjoining it on the north a dry shed forty by one hundred feet, around both of which was a platform, the west side of which extended one hundred and forty feet long and about twelve inches east of appellee's spur track, which extended from the south end of said platform to a juncture with the main track about one hundred and fifty feet in a northwesterly direction from the north end of said platform. The dry shed was not floored, but under it were heavy sills placed in trenches and nearly level with the ground, upon which sills rested two by twelve sleepers on which lumber was piled. The "filing room" was in the end of the dry shed adjoining the planer shed. The floor of the planer shed was four feet above the ground. The machinery was on the floor under the planer shed. Three box cars stood on the south end of the spur track. Appellant's boiler and engine room was forty feet south of the planer shed and on the other side and south of a dirt road which came in from the east and ran westwardly nearly to the main track and thence northwardly and parallel with the main track, which ran almost north and south and about forty-five feet west of the spur track. Appellant's property caught fire shortly after noon of October 1, 1909. The origin of the fire rests exclusively on circumstantial evidence. There was no

proof that sparks of fire were seen to come from appellee's locomotive and fall on appellant's property. That the plant was afire was first discovered by Marshall, one of appellant's employees, who was then at his home some one hundred and fifty or two hundred yards from the planer shed. For twenty-four hours there had been no fire about the plant, except a little in a zinc tub in the engine room, in which tub some babbitt metal had been melted on the forenoon of the day on which the plant was burned.

Marshall testified that the fire in the tub was put out that morning. Thompson testified that before noon he put out all the fire in the tub by pouring water on it, and that he also poured water on the floor where the tub was. Phillips testified that there was scarcely any fire in the tub that morning; that they used just a few coals in melting the babbitt metal in the tub which was about half full of dirt; that no large fuel was used in it—only small stuff, with which to make a quick heat; that the fire in the tub had burned down and that water was poured on it and it was extinguished. Houston testified that between 10 or 10:30 o'clock that morning, Thompson put out the fire in the tub by pouring water on it. Several witnesses testified that only a few minutes—perhaps about fifteen minutes—before the plant caught fire appellee's locomotive No. 59 passed the plant, moving over the main track and pulling a freight train. Two witnesses testified that about one hour before the plant caught fire said engine No. 59 set fire to grass some two hundred or three hundred yards from the plant, and on the same side of the main track; or at least fire broke out in the grass there in a few minutes after that engine passed. Thompson testified that not over two weeks before the plant burned he had put out a fire which was burning grass on appellee's right of way south of the plant. This was corroborated by Murphy, who also testified that about a week before the plant was burned said engine No. 59 set fire to the south yard, upon which occasion he and Thompson ran up there and tore a stack of lumber completely down and that it came near burning down before they could do so. Thompson also testified that on October 6th, five days after that on which appellant's plant was burned, he watched from said engine room and saw the grass on said right of way afire shortly after said engine No. 59 had passed the place where the fire broke out in the grass; that the grass was very dry then; that it had been an unusually dry year.

A number of witnesses testified that when said plant was burned the wind was blowing from the west toward the planing mill. Several witnesses testified that grass and weeds were growing between the main track and the spur track. Richardson testified that when he got to the scene of the fire there was some grass burning between the spur track and the main track and that some of it had burned over, and that the grass west of the main track was burning. Harris testified that when he got to the fire some posts of the shed were standing, but the roof had fallen in and the water tower was on fire, and that three box cars standing on the spur track seemed to be on fire pretty much all

over; that the grass between the tracks had burned off; that the grass on the west side of the track was on fire, and had burned down to the bridge on the branch south of the plant, and was burning on both sides of the road, and that he thought it had burned on the side next to the planer down to the branch.

Thompson also testified that "there was a right smart of grass along on the side of the platform spur; it was on the west side and kind of up in the track; that at the point or close to the point where this fire was discovered on the west side of the spur track, most of the grass was all mashed down on the ground; we had unloaded some lumber there; they picked the lumber up and the grass was all on the ground, which was about four inches high before it was mashed down; there was not a thick coat of grass all along there, it was sort of scattered; there was weeds on the right of way at that place."

Appellee's roadmaster, Holland, testified that about a week or ten days before the plant was burned he had the grass and weeds cut off around the planer spur, back up to the end of the spur; that they were, and during the year had been, using the ground on the west of the spur, between it and the main track, to unload lumber from the cars to the ground, which was nearly all full of lumber the length of the platform; and that "the reason we had not cleaned that up was that."

Marshall, who first saw the fire, testified that just west of the point where it was discovered two or three box cars stood on the spur track; that he got there very soon after the fire started; that the smoke did not appear to be coming out of the filing room or the shed, but was coming up between the cars and the shed or the platform.

Hadlock, a witness for appellee, testified that he had inspected said engine No. 59 late in the afternoon of the day on which the plant burned, and also before and after that day, such examinations having begun in the previous March or April, and that he had always found the engine in good condition, and that at all of those times it had carried the same spark arrester.

McLow, another witness for appellee, testified that in operating an engine hard labor causes it to emit sparks; that it is not possible, in the construction of a steam engine or of a railroad engine, propelled by steam, to construct an appliance that will absolutely prevent the escape of sparks.

Without commenting upon the testimony in this case further than is necessary in passing upon said assignment of error, we must say that, in our opinion, the foregoing requested charge should have been given to the jury.

In affirming the judgment of the trial court the Court of Civil Appeals said: "So, under the circumstances, in order to say that the locomotive set out fire it would have to be presumed from the circumstances that it had previously done so. But this presumption could not be made the basis of another presumption that the fire set out fell in the grass. Nor could the further presumption be indulged on this presumption that the burning grass spread to the appellant's property."

We are unable to assent to that course of reasoning, as we think that what are so termed "presumptions" are, in fact, mere links in a chain of circumstantial evidence.

Appellant's second assignment of error complains of the exclusion of certain evidence of its witness Hogg, which seems to have been intended to complete a conversation about which a witness for appellee had already testified, and to explain why one of appellant's employees had forbidden the removal of certain lumber during the fire. Said excluded evidence appears to relate to appellee's plea that appellant negligently failed and refused to make any effort to save its property while the fire was in progress—an issue which was not submitted to the jury.

Appellant's bill of exception to the exclusion of said testimony does not comply with the requirements of the rules. It does not show for what purpose said testimony was offered, nor the grounds of the objection made to it, nor the grounds upon which the trial court excluded it, and said assignment will not be further considered. Johnson v. Crawl, 55 Texas, 571; Kolp v. Specht, 33 S. W., 714; I. & G. N. R. R. Co. v. Jones, 60 S. W., 978; Edgar v. State, 129 S. W., 140.

Appellant's third assignment of error complains of the third paragraph of the charge to the jury, which is as follows:

"If you believe from the evidence that the defendant had used ordinary care to equip its engine with one of the most approved spark arresters in use by railway companies, and that it had used ordinary care to keep the same in repair, and that the engineer in charge of said engine used ordinary care in operating the same to prevent the escape of fire, then you will find for defendant, even if you believe from the evidence that sparks of fire escaped from said engine and set fire to said property and thereby destroyed it."

The gist of appellant's contention is that it is the duty of the railway company to exercise ordinary care to provide its engines with the "most approved spark arresters in use," but that under said charge it was required merely to exercise ordinary care to equip its engine with "one of the most approved spark arresters in use."

Appellant thus assumes that under the evidence there were two kinds of spark arresters which belonged in the "most approved" class, and insists that under these circumstances the court should have charged the jury that it was the duty of the railway company to exercise ordinary care to select and use the better of the two.

The general rule upon which appellant relies, and which the trial court undertook to apply, and which the Court of Civil Appeals recognizes in this case, is that it is the duty of a railway company operating a locomotive engine by the use of steam, as in this case, to exercise ordinary care to equip its engines with the best and most approved devices and appliances for preventing the escape of sparks and fire therefrom. Missouri, K. & T. R. Co. v. Carter, 95 Texas, 461, 68 S. W., 165. The difficulty lies in applying the rule to the facts of a particular case.

In the Carter case, supra, this court said:

"The testimony in this case tended to prove that each of two different kinds of spark arresters was used by railroad companies, and each was considered by experienced railroad men as better than the other, which produced a condition in which it was necessary for the railroad company to make a choice between the two. Under this state of facts, it was the duty of the railroad company to exercise ordinary care—that is, such care as a man of ordinary prudence would exercise under like circumstances—to select and use the better of the two, but, having used such care as the law requires, it can not be held that a failure of judgment honestly exercised in an attempt to discharge the duty should render the company liable. Turnpike Co. v. Railway Co., 54 Pa., 350; Jackson v. Railway Co., 31 Iowa, 178; Hoye v. Railway Co., 46 Minn., 269; Railway v. Corn, 71 Ill., 296; M. R. Sash and D. Co. v. Railway, 91 Wis., 463."

Ordinarily the use of the superlative would imply that the "most approved" spark arrester belongs in a class to itself; but in the light of all the evidence in this case as to the wire spark arrester and the number of railroads using it, and as to the perforated plate spark arrester and the number of railroads using it, we are not prepared to say that the jury may not have been misled or confused by that portion of the charge of the court.

Inasmuch as the judgments of the Court of Civil Appeals and of the trial court will be reversed and the cause remanded upon another ground, as above indicated, we consider it unnecessary to here enter into a more extended consideration of the question, and content ourselves with suggesting that upon another trial the charge of the jury be kept free from any and all possible ambiguity upon the point involved.

For reasons stated, appellee's first assignment of error is sustained, and the judgments of the Court of Civil Appeals and of the District Court are reversed and this cause is remanded.

*Reversed and remanded.*