**TURNER et ux. v. TUTEUR et al.**
**(No. 930.)**

(Court of Civil Appeals of Texas. Beaumont. April 13, 1923. , Rehearing Denied April 25, 1923.)

1. **Appeal and error** ⊜⇒927(7) — **Evidence viewed most favorably to plaintiffs on question of whether court properly directed verdict for defendants.** -

In ascertaining whether the trial court erred in directing a verdict for the defendants, the appellate court must discard all of the evidence favorable to the defendants and view all the evidence in the aspect most favorable to plaintiffs.

2. **Trial** ⊜⇒140(2)—**Credibility of interested witness for jury.**

The credibility of an interested witness was for the jury.

3. **Mortgages** ⊜⇒154(3), 186(6)—**Purchasers' possession before execution of deed held not to charge third person who made mortgage loan to broker to whom vendor had executed deed with notice of purchasers' contract with broker; notice to mortgagee held for jury.**

Where purchasers employed broker to purchase property, and thereupon went into possession with vendor's consent given under broker's agreement with vendor that purchasers would buy the property for a specified price, and broker thereafter without purchasers' consent induced vendor to execute deed to broker and executed deed of trust to third party to secure third party's loan to broker before execution of deed by broker to purchasers, who were led to believe that they were getting a clear title except as to notes for an amount less than third party's loan to broker secured by deed of trust, purchasers' possession of the property at the time of transaction between broker and third party was not in itself sufficient to put third party on notice of the conditions of their occupancy and of their contract with broker, since purchasers at such time had no rights in the property as between themselves and vendor, and the question whether the third party had notice of purchasers' right was for the jury in purchaser's action to cancel the deed of trust.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by C. A. Turner and wife against Mrs. Pauline Tuteur and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Stevens & Stevens and Holland & Carleton. all of Houston, for appellants.

Moody, Boyles, Walker & Scott, of Houston, for appellees.

WALKER, J. Appellants, C. A. Turner and his wife, Mrs. Sallie E. Turner, instituted this suit in one of the district courts of Harris county against appellees Ed S. Phelps and Mrs. Pauline Tuteur, to cancel a deed

of trust executed to Phelps by the Houston Real Estate & Loan Corporation on certain property in Houston to secure Mrs. Tuteur in the payment of two notes, one for $500 and the other for $1,625. Appellees impleaded the Houston Real Estate & Loan Corporation, and prayed for a personal judgment against it for the amount of the notes, and for foreclosure of the deed of trust lien against it and appellants. On the trial to a jury a verdict was instructed for appellee. The facts are as follows:

About the 1st of November, 1919, one F. E. Pye, acting for the Houston Real Estate & Loan Corporation, which will be referred to herein as Pye's Company, contracted with appellants to purchase for them the property in controversy from Mrs. Fuller and her minor children, who lived at Sour Lake, Tex., and who had offered to sell the property for $2,500 cash. Under this agency contract appellants paid to Pye $1,000, and his company was to furnish the balance of the purchase price and receive a commission from appellants for his services in buying the property. Soon after making this contract Pye wrote to the Fullers to execute to appellants a deed to the property, reciting a cash consideration of $2,500, advising them that he was representing appellants, and that they had deposited that amount with him. Nothing was done under this offer. Later, about the first of the year, he again requested the Fullers to execute to his clients a deed to the property, reciting a cash consideration of $1,000 and a vendor's lien for $1,500. This deed was duly executed as of date January 5, 1920, and under Pye's instructions forwarded to Houston with draft attached for the amount of the purchase price, but Pye did not take up the draft. Later he requested the Fullers to execute the deed to his company, reciting a cash consideration of $2,500, and to forward the deed to Houston with draft attached. The Fullers complied with this request, executing the deed as of date the 13th day of February, 1920. In the meantime Pye had arranged with Phelps to help him finance the purchase. On March 10th Pye told appellants that he could raise only $1,000 of the purchase price, and, if they wanted the property, they would have to advance him an additional $500, which they did. Then he went to the bank with Phelps, who paid on the draft $2,125, and Pye paid the balance, $375. Pye then had his company execute the two notes to Mrs. Tuteur and a deed of trust to Phelps on the property for the purpose of securing the payment of the notes, and delivered the Fullers' deeds and the deed of trust to Phelps, who had them duly recorded. Immediately after executing the deed of trust Pye returned to his office, where he had left appellants, exhibited to them what he represented as being a deed to him from the Fullers, and had his company execute to them a deed to the property, recit-

ing a cash consideration of $1,000 and vendor's lien notes to the amount of $1,500, giving due credit on the notes for the sum of $500, which his clients had just paid him, but concealed from them his dealings with Phelps. Appellants knew nothing of the dealings of Pye with Phelps in this last transaction, and believed they were getting a clear title to the property, except as to the notes which they were executing, and which they afterwards paid in full. When Pye began negotiations with the Fullers he secured their consent for appellants to take possession of the property under an agreement that they would purchase it at the agreed price of $2,500. Appellants immediately went into possession and held possession until long after the execution of the deed of trust to Phelps.

[1] The only question raised by this appeal is the sufficiency of the evidence to visit Phelps with notice of the agency contract appellants had with Pye's company at the time Pye paid the $375 and he paid the $2,125 on the Fuller draft. Phelps testified that he did not know anything of the Turners, had never heard of them, and thought that Pye was buying the property for his company at the time he advanced the money. His testimony shows that he dealt with Pye in the utmost good faith. But, in determining this question, we must discard all of the evidence favorable to appellees, and view all the evidence in its most favorable aspect to appellants. Progressive Lbr. Co. v. Marshall & E. T. R. Co., 106 Tex. 12, 155 S. W. 175, and authorities therein cited.

[2, 3] J. E. Winfree was attorney for Pye's company in all the transactions leading up to the final purchase of this property. His testimony raised the issue that Phelps agreed with Pye, the agent of appellants, to purchase the vendor's lien note described in the deed of January 5, 1920, but which was not delivered because of Pye's failure to pay the draft attached thereto. Although appellants were in possession of the property at that time, under their agreement to purchase, Phelps denied knowledge of that fact, and said that when he was inspecting the property Pye told him it was occupied by tenants; but, being an interested witness, his credibility was for the jury to pass on. As appellants had no rights in the property at that time as between them and the Fullers, we do not agree with their contention that their possession was of itself sufficient to put Phelps on notice of all the conditions of their occupancy, and of the contract with Pye's company, nor do we agree with them that, because Pye's agency was special, appellees were visited with notice of the extent of his authority—that is, that he had authority to borrow for them on the property only $1,500, and that he had in his possession $1,000 of the proposed purchase money. But, while his agency was special, that is, to borrow

money with which to purchase the property, prima facie there was no limit on the amount he could borrow. Having intrusted him with this agency, appellants were bound by all that he did in financing the purchase of the property for them, and they have no relief for the abuse of that authority as against those who dealt with him without notice, either actual or constructive, of their rights. The possession of appellants and the facts testified to by Winfree were all before the jury for their consideration in determining whether at the time Phelps assisted in financing the purchase in the name of Pye's company he had notice, or ought to have had notice, of appellant's rights. We believe this evidence raised that issue. If he had such notice as between him and appellants, he acquired no greater right in the property on the delivery of the deed than did Pye's company, which was that of a trust to secure him in the money which it was Pye's duty to advance. There is no circumstance in this record which could be construed as giving Phelps notice of the last $500 advanced by appellants. Pye paid in cash on the draft $375. Therefore the only issue raised by the evidence which it was the trial court's duty to submit to the jury was whether Phelps and his client, Mrs. Tuteur, should be charged with the difference between the $1,000 held by Pye at the time of the first negotiation and the $375 which he paid on the draft at the time the deed was delivered. That this issue may be submitted to the jury, we reverse and remand this cause for a new trial.

Reversed and remanded.