### RAPER et al. v. PARMENTER.    (No. 344.)

Court of Civil Appeals of Texas. Eastland.
Oct. 21, 1927.

Rehearing Denied Jan. 6, 1928.

1. **Appeal and error** ☜➡766—**Erroneous instructed verdict was fundamental error, requiring court to consider briefs and to review testimony, though briefs did not comply with rules (Court of Civil Appeals rules 24–26, 29–32).**

Erroneous instructed verdict for plaintiff was fundamental error, requiring Court of Civil Appeals to consider briefs and to review testimony on point, though briefs contained insufficient statement of cause of action and did not comply with Court of Civil Appeals rules 24–26, 29–32.

2. **Appeal and error** ☜➡927(7)—**In reviewing ruling on motion for instructed verdict, only evidence favorable to appellant should be considered and this evidence in light favorable to him.**

In determining whether issues of fact should have been submitted to jury as against motion for instructed verdict, only evidence favorable to appellant's contention can be considered, and this must be taken in light which is most favorable to him.

3. **Trusts** ☜➡101—**If broker and third party acted as partners or jointly to obtain part of royalty being sold and thereby to obtain unauthorized commission, equity would raise trust against both.**

Where plaintiff represented by broker conveyed mineral royalty in undivided 100-acre interest to innocent purchaser, who immediately conveyed 45-acre interest to broker and third party, if broker and third party acted as partners or jointly to obtain title to portion of royalty interest and thereby to enable broker

to obtain commission in excess of that stipulated, equity would raise trust in land in favor of plaintiff as against both broker and third party.

**4. Trusts ☞101—Third party producing purchaser who agreed to convey to him portion of royalty interest to be purchased could take good title from purchaser as against vendor if acting innocently.**

Third party producing purchaser for mineral royalty interest, who had previously agreed to convey to third party portion of interest which should be purchased, could take good title from such purchaser by gift or purchase as against vendor, unless he was acting as partner or jointly with vendor's broker to obtain commissions in excess of those stipulated.

**5. Principal and agent ☞69(1)—Agent cannot have interest in sale of principal's property without principal's consent, given freely, with full knowledge.**

Agent cannot either directly or indirectly have interest in sale of property of principal which is within scope of agency, without consent of principal, given freely, after having full knowledge of every matter which might affect principal.

**6. Trusts ☞101—Agent selling principal's property to himself under third person's name becomes trustee.**

Agent cannot sell his principal's property to himself under cover of third person's name, and, if he does so, he becomes, in respect to that property, a trustee for the principal.

**7. Trusts ☞111—Whether evidence established trust on ground that vendor's broker and third party acted as partners or jointly to obtain unauthorized commission held for jury.**

Where plaintiff represented by broker conveyed mineral royalty in undivided 100-acre interest to innocent purchaser, who immediately conveyed 45-acre interest to broker and third party, whether evidence established trust in favor of plaintiff on ground that broker and third party acted as partners or jointly to secure title to 45-acre interest and thereby to enable broker to receive unauthorized commission in addition to agreed commission *held* question for jury.

Appeal from District Court, Throckmorton County; Bruce W. Bryant, Judge.

Suit by W. E. Parmenter against H. M. Raper and another, in which S. R. Davis intervened. From a judgment in favor of the plaintiff, defendants appeal. Reversed and remanded.

T. R. O'Dell, of Throckmorton, for appellants.

G. O. Bateman, of Breckenridge, for appellee.

LESLIE, J. This suit was tried in the district court of Throckmorton county, and, from a judgment based on an instructed verdict in favor of the plaintiff, the defendants perfect appeal to this court. In substance, the litigation grows out of the following transactions reflected by the pleadings and the testimony:

W. E. Parmenter, plaintiff below, appellee here, owning a royalty interest in 400 acres of land, listed for sale with H. M. Raper, at a price of $4,000 an undivided one-fourth (100 acres) thereof, agreeing to pay a commission of 5 per cent. Within the time prescribed for the sale, Raper presented him with a deed to be executed by himself and wife, conveying to S. R. Davis the property listed, for the sum stipulated. Parmenter refused to execute it because there was no provision therein that he should receive the annual rentals carried by his original lease. Parmenter came to town, discussed that matter with Davis, who waived that feature and agreed to accept a conveyance and pay the $4,000. Thereupon Parmenter and wife executed and delivered to Davis the conveyance of 100-acre interest, received the consideration, and immediately paid Raper the stipulated commission.

Within an hour subsequent to the deal between Davis and Parmenter, Davis conveyed to W. O. Pigg and the said H. M. Raper a 45-acre interest in the purchase, and this suit is by Parmenter to recover that 45-acre interest, alleging the same to be an excess profit or commission collected by his agent, Raper, over and above the stipulated fee he had paid him. Plaintiff alleges:

That this conveyance was "in furtherance of a design theretofore formed by the defendants and each of them, to obtain a greater compensation for the services of the said Raper in effecting said sale, than that provided in the contract. * * * That no consideration passed between the defendants and the said Davis. * * * That same was only additional compensation sought to be obtained by the defendants for the services of the defendant Raper, * * * in violation of the terms of the contract." That Raper, "in procuring * * * a conveyance to himself and codefendant, Pigg, of said 45-acre interest was doing so in an effort to violate the trust imposed upon him by the plaintiff, and said interest in the hands of said defendants is in trust for the benefit of this plaintiff. * * * That the title to the said 45 acres is now in fact held in the name of the defendants in trust for the benefit of this plaintiff, the real owner thereof. That only a 55-acre interest was in fact sold to the said Davis, and the said interest now in the name of the defendants is in fact the property of this plaintiff and a trust in favor of this plaintiff resulted from all the transactions herein pleaded."

In another paragraph the plaintiff charged Pigg with being a partner of Raper in all the transactions pleaded, and in the alternative that, if no partnership existed, then Pigg acted conjointly with Raper and "accepted conveyance of said interest with the full knowledge of the facts and rights of the defendant Raper in said contract with plain-

tiff and of the terms of the sale to the said Davis; that neither of them parted with any consideration whatever."

The defendant Pigg answered by demurrers, general and special, denied existence of partnership under oath, entered a general denial to plaintiff's allegations. He specially denied any contractual relations as agent or otherwise with plaintiff, Parmenter, or that he owed him any duty as such. He denied making any representations to the plaintiff "as to the *price* of the land sold or the *amount* sold to S. R. Davis," or that he had in any form or manner received any commissions from plaintiff for selling the land.

The defendant Raper answered in manner similar to Pigg, after demurrers, denying generally plaintiff's allegations, denying under oath any partnership relations with Pigg or that he entered into any scheme with him to defraud plaintiff, and stood on the terms of his listing contract, alleging:

"That defendant (Raper) entered into the contract as alleged by plaintiff, in which plaintiff authorized the defendant to sell plaintiff's royalty interest at $40 per acre and agreed to pay defendant 5 per cent. of the selling price, and the defendant complied with the terms of said agreement by selling * * * the (100-acre) interest listed * * * to S. R. Davis for $4,-000."

Raper specially denied that he received any part of the acreage from S. R. Davis as his commission, but alleged:

That he "purchased a portion of said lease by a separate contract from W. O. Pigg and agreed to accept a deed from Davis to said acreage. That he advised plaintiff of the price Davis was giving for the royalty, and that plaintiff ratified his contract with Davis and executed the royalty deed direct to S. R. Davis. * * * That the only services rendered by defendant Huey Raper for plaintiff, W. E. Parmenter, was to bring him and S. R. Davis together, and a final trade was made by plaintiff himself with S. R. Davis. That the original trade made with W. O. Pigg and S. R. Davis by the defendant Huey Raper was never consummated; plaintiff having refused to execute and carry out the trade as made by the defendant."

Raper acknowledged receipt of the 5 per cent. commission.

S. R. Davis was not made a party defendant by the plaintiff, Parmenter, but he asked and was granted permission to intervene, which he did, for the purpose of protecting his title to the 55-acre interest retained by him from having some possible cloud cast upon the title thereto. He affirmatively alleged:

That he purchased the entire 100-acre interest from Parmenter and received conveyance therefor. "That * * * he conveyed a 45-acre interest in said land to W. O. Pigg and H. M. Raper. That the trade was made wholly between your petitioner S. R. Davis and W. O. Pigg, but that the name of H. M. Raper was added in the deed at the request of W. O. Pigg and under a contract of conveyance entered into by W. O. Pigg subsequent to the original trade with W. O. Pigg. That said deed from your petitioner to W. O. Pigg was made in the due course of trade, and, so far as your petitioner knows, the trade was perfectly legitimate and free from fraud on the part of anybody. That your petitioner, before closing a contract to purchase with W. E. Parmenter, discussed every phase of said contract in detail with the said W. E. Parmenter, and the trade was finally made with him personally by your petitioner, and that the consideration therein set out was the full, complete consideration and in accordance with the agreement of conveyance with the said W. E. Parmenter. That the amount of land set out in said deed from W. E. Parmenter to your petitioner is correct and in accordance with W. E. Parmenter's agreement of conveyance."

Prayer that the plaintiff take nothing, etc.

Following the intervener's filing of the above plea of intervention, plaintiff, Parmenter, pleaded thereto, disclaiming "any right to or interest in and to $^{55}/_{100}$ mineral interest" claimed by Davis.

[1] At this point we dispose of appellee's numerous objections to the consideration by this court of the briefs filed herein by appellants. In substance, the appellee's objections are: (1) That the briefs contain an insufficient statement of the cause of action; and (2) that, in the preparation of their briefs, appellants have failed to observe rules 24, 25, 26, 29, 30, 31, and 32 for Courts of Civil Appeals. On the whole we think these objections are well founded, but we do not believe that we are authorized to disregard the briefs entirely, for, in one respect, there is presented to this court an alleged error so fundamental in its nature, complaining of the instructed verdict for the plaintiff, that it is deemed to be our duty to consider the same. It is presented in this manner: Appellants in their motion for a new trial and in their supplemental motion therefor, allege:

"That the court erred in giving the plaintiff said peremptory instructed verdict, because there were not less than five well-defined issues made by the pleadings of the plaintiff and flatly denied by the defendants, both by their answer and by their testimony."

These motions for a new trial were adopted as assignments, and an examination of the briefs tendered in this court in connection with appellants' reply brief, discloses that at some point therein in each of them the same assignment has been brought forward, followed by appropriate statements. So, at most, it appears that the point has been defectively briefed and presented in this court by each appellant, and, the court's action complained of being fundamental in its nature, it is both our right and duty under the record to review the testimony to ascertain if the court's action was erroneous.

Egan v. Lockney Farmers' Co-op. Society (Tex. Civ. App.) 275 S. W. 732; Id. (Tex. Com. App.) 284 S. W. 937.

Each litigant offered pertinent testimony in support of his allegations. Parmenter denied that Pigg was in any respects his agent, and stated that he signed a deed to the 100-acre royalty interest for the $4,000.

S. R. Davis testified: That he purchased the 100-acre royalty interest from Parmenter for $4,000 that he conveyed the 45/100 interest in this acreage to W. O. Pigg and H. N. Raper. That the recited $500 consideration 'in' the deed was not paid and was a mere matter of form. That he never talked to Raper at any time about this transaction. That Pigg alone put this proposition up to him and induced his purchase thereof. That he agreed with Pigg to take 55 acres thereof at '$75 per acre, paid $4,125 for the same, delivered Pigg a check for $125, paid Parmenter $4,000 for the 100-acre interest, and deeded Pigg the 45 acres. That he was just buying 55 acres. That such was his contract and understanding with Pigg. That he entered into no scheme with Pigg about this deal in any way. That he never talked with Raper about it at any time. That, when he came to convey the 45 acres to Pigg, Pigg suggested that Raper's name be included in the deed, but that this was not in the original understanding with Pigg. That Pigg assisted him in getting this proposition. That his services, whatever they were, were satisfactory to him. That as between himself and Parmenter he was getting 100 acres and under his contract with Pigg the latter was to have the 45 acres and the $125.

W. O. Pigg denied partnership relations between himself and Raper or that they had ever at any time divided or agreed to divide commissions and profits arising from the Parmenter deal. He denied any joint action or co-operation on his part with Raper to enable him to collect any excess profit or commission of his principal. Pigg further alleged and testified: That no one made a contract with him to go out and sell the royalty, but that O'Dell told him that anybody that could get Raper $4,000 for 100 acres could get it. That he was therefore trying to sell it, and that, when Davis agreed to take it under the arrangements he had with him, he (Pigg) went to Raper and told him that he had a man that would take it and for him to sign Parmenter up. That he "figured that that was Raper's job, he was to deliver it." That until the time of this trial Raper knew nothing about his receiving the $125, nor did he inform Raper of the nature of the deal between himself and Davis. That, after the deal between Parmenter and Davis was closed, Raper came to him and purchased from him a one-half interest in the 45 acres, executing a promissory note in the sum of $900

therefor, which at the date of this trial was neither due nor paid. That he merely furnished Davis, the purchaser, with whom he had an understanding that he was to make a $4,000 check payable to Parmenter, one for $125 payable to himself and convey him the 45/100 interest in the acreage. That there was no splitting of commissions between himself and Raper, and Davis did not know that Raper's name was to be included in the conveyance of the 45 acres until Davis came to execute the same.

H. M. Raper testified that he received no additional compensation or commissions over and above his 5 per cent. commission from Parmenter. That he purchased the one-half interest in the 45-acre conveyance, executing his note therefor. That there was no understanding or agreement between himself and Pigg or any one else at any time designed to enable him to collect an excess profit or commission out of the deal. He denied the existence of any partnership relations between himself and Pigg, and his testimony is corroborative of that of Pigg and Davis.

[2] This being the state of the record, we must apply thereto the fundamental principle that, when there is an instructed verdict, only the evidence favorable to appellant's contention should be considered in determining whether the issues of fact, if any, raised by the testimony should have been submitted to the jury. This testimony must be taken in its most favorable light. No question of preponderance of the evidence is involved. Stewart v. Miller (Tex. Civ. App.), 271 S. W. 311; Progressive 'Lumber Co. v. Railway Co., 106 Tex. 12, 155 S. W. 175; Charles v. El Paso Elec. Ry. Co. (Tex. Com. App.) 254 S. W. 1094. This rule we must apply to the testimony disclosed by this record.

[3] If this were merely a transaction between Parmenter and his agent, Raper, and it conclusively appeared that the agent received a profit—the 45-acre royalty involved—over and above the stipulated commission of 5 per cent. his principal agreed to pay him, the proposition would be a simple one, and equity would impress the same in the hands of himself with a trust in favor of Parmenter, who would be entitled to recover it. Likewise, if Pigg and Raper, by agreement and design, adopted the method pursued in this transaction to ultimately lodge the title to this 45-acre interest in themselves, and by so doing enable Raper to receive a profit or commission out of the deal to the extent indicated, over and above his lawful commission, then clearly, as soon as the conveyance was made by Davis to Raper and Pigg (granting that Davis was innocent of any wrongdoing), equity would impress the same with a trust in favor of Parmenter, who could recover from both of them, upon the principle that the law

guards against the abuse of fiduciary relations and will not permit an agent and those jointly interested or participating in such misfeasance to act for themselves, as well as the principal in the same transaction, so as to reap a profit over and above the stipulated fee. To permit otherwise would be to encourage and reward infidelity in fiduciary relations.

[4] It will be observed that the entire interest in the 100 acres was first conveyed directly to Davis, and there is no pleading upon the part of the plaintiff, Parmenter, challenging Davis' part in this transaction for fraud or any other reason. No bad faith is charged to him by the plaintiff, and none can be imputed to him by this court. He comes into this lawsuit as an intervener to protect the title to the interest remaining in him from being clouded by any possible outcome of this litigation. Therefore, if Pigg acquired from some innocent source the information, as he testified, that Parmenter was proposing to convey the 100-acre royalty interest for $4,000, and upon this information he (Pigg) produced in Davis a purchaser willing to purchase the same for that price, with the understanding that the purchaser, Davis, was to make the $4,000 check payable to Mr. Parmenter, and one for $125 payable to himself and convey to him 45 acres of the royalty, it appears to us, and we so conclude that, in the absence of concerted action on the part of Davis, Pigg, and Raper, or some fraudulent action on Davis' part, in connection with them, towards Parmenter, designed to enable Raper to receive an unauthorized profit or commission out of his principal, Davis became the sole owner of the title, both legal and equitable, to the entire interest in the 100-acre royalty conveyed him, and that Parmenter would be unable to recover any part thereof while the title was thus standing in the name of his grantee, Davis.

If Pigg, knowing that Parmenter was proposing to sell the 100-acre royalty interest for $4,000, had fairly negotiated a deal with Davis, whereby Davis was to take 55 acres thereof for $75 per acre and had induced Davis to deliver to him $4,125 to enable him to go and make a purchase of Parmenter, and he had so gone and purchased the 100 acres for a consideration of $4,000, taking the conveyance direct to himself, and returned and conveyed to Davis the 55 acres desired by him and for which he was willing to pay $75 per acre, it is believed that Parmenter nor no one else could successfully challenge Pigg's full and complete title and ownership to the 45 acres remaining in his name and $125 left in his pocket. While this would have its unusual features and perhaps indicate extraordinary profits, as well as possible gullibility on the part of Davis, yet, if there were no partnership relations between Pigg and Raper and no joint understanding on their part whereby the former was to have assisted the latter in procuring the 45-acre interest over and above his commissions, the law would not condemn the title of Pigg derived through the course of dealing just indicated, and we do not think the status of his title in the method pursued differs in its legal aspect and sufficiency from that last described, and which must be conceded free from question.

If Pigg were not a partner with Raper and he in no respect co-operated with him in a joint enterprise to accomplish the deal as outlined in the plaintiff's pleadings and thereby enable Raper to acquire a profit he was not entitled to, then Pigg would take, either by purchase or gift from Davis, an unincumbered title, and he in turn could dispose of the same likewise to Raper. However, if these transactions of Raper and Pigg, including the execution and delivery of the $900 note, were but a joint enterprise or scheme resorted to by them to enable Raper to obtain through the medium of this deal an interest in his principal's royalty over and above his stipulated commission of 5 per cent. then equity would impress such interest in their hands with a trust in favor of Parmenter, and they would not be permitted to escape such a consequence, even though they had used Davis as an innocent agent through whom to make the unlawful profit. McMahan v. Alexander, 38 Tex. 135; Shannon v. Marmaduke, 14 Tex. 217; Tyler v. Sanborn, 128 Ill. 136, 21 N. E. 193, 4 L. R. A. 218, 15 Am. St. Rep. 97; Fry v. Platt, 32 Kan. 62, 3 P. 781; Pomeroy's Equity Jurisprudence (4th Ed.) § 959; 31 Cyc. 1134–1139.

[5, 6] There is no more familiar principle of law than that an agent cannot either directly or indirectly have an interest in the sale of the property of his principal which is within the scope of his agency, without the consent of the principal, freely given, after having full knowledge of every matter which might affect such principal. It is equally as certain that an agent cannot sell his principal's property to himself under the cover of the name of a third person, and, if he does, he becomes, in respect to that property, a trustee for the principal, and may be compelled by such principal to surrender it to him.

[7] Believing that the testimony offered by the defendant raised an issue of fact which we have indicated herein, and that the same should have been submitted to the jury, we have concluded that the court erred in giving the instructed verdict, and, for the reasons assigned, the judgment of the trial court is reversed, and the cause remanded.

HICKMAN, J., disqualified and not sitting.