**CHAPMAN, Com'r of Banking, v. FOUNTAIN.
(No. 1092.)**

(Court of Civil Appeals of Texas. Beaumont. March 25, 1924.)

Appeal and error ⊗══1011(1)—Trial court's finding on conflicting evidence on issue of payment not disturbed.

In action on note executed to bank, trial court's finding on conflicting evidence in favor of defendant on issue of payment *held* conclusive.

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Action by J. L. Chapman, Commissioner of Banking, against J. O. Fountain. Judgment for defendant, and plaintiff appeals. Affirmed.

W. J. Rogers, of Eastland, for appellant.
Thos. B. Coe, of Kountze, for appellee.

HIGHTOWER, C. J. The appellant, J. L. Chapman, in his capacity of commissioner of banking of this state, sued the appellee, J. O. Fountain, in the district court of Tyler county on a note executed by Fountain to the Tyler County State Bank, for the amount of $750. Afterwards the Tyler County State Bank failed, and was taken over by appellant, in accordance with the authority conferred upon him by the statutory law of this state. The answer of appellee interposed a plea of payment of the note, and this was the issue before the trial court.

Upon the trial, appellant introduced the note declared on, which showed no credits or payments, and rested. The appellee, Fountain, as a witness in his own behalf, testified positively that he had paid the note along with a number of others for like amounts which had been executed by him in favor of the bank, and that all of them save the one here sued on had been canceled and returned to him by the bank, and he did not know, and was unable to explain, just why the note in question was not also canceled and returned to him. He further testified that the note in question was executed in favor of the bank at a time when he was making large timber purchases, aggregating something like $75,000, and that during the time he was making these timber deals he had transactions with the Tyler County State Bank aggregating something between $12,500 and $18,000. He further testified that as he would realize profits from his timber deals he would pay off the notes that he had executed in favor of the bank for borrowed money in making the deal, and that this $750 note was one among others, as we have stated, executed by him during those transactions. In corroboration of his testimony, appellee introduced in evidence a letter written by the bank to him, in which it was stated, substantially, that all the notes executed by Fountain in the bank's favor in connection with the timber transactions had been paid by him to the bank, and that he had a balance in the bank at that time of the sum of $543. The letter did not refer specifically to the note in question.

In rebuttal of Fountain's testimony and the letter, appellant introduced two witnesses who had been connected with the bank, and one of them testified positively that the $750 note executed by Fountain and here sued on was not in connection with Fountain's timber deals and transactions, but that it was a note executed by Fountain to the bank for stock in an oil corporation known as the Black Creek Oil Company, which some of the officials of the bank and Fountain and perhaps others were at that time organizing for the purpose of exploring and drilling for oil. This witness further testified that he himself had executed a like note to the bank for oil stock in the contemplated oil company, and that he knew that the note here in question was executed by Fountain for the same purpose. He further stated that he did not intend to pay the note to the bank when he executed it, but that it was the intention at least of himself that when suffi-

cient amount of the stock of the company should be sold to other parties and paid for, his note would be canceled and returned to him, and this witness leaves the implication that such was Fountain's intention and purpose when he executed the $750 note sued on. Fountain denied all this emphatically, and testified that the note in question had nothing to do with the oil stock transaction, but, on the contrary, that he furnished a drilling rig and went to some other expenses for the contemplated oil company as his share of the stock in that company.

Upon this evidence, substantially stated, the trial court sitting without a jury rendered judgment in favor of appellee, Fountain, which involves a finding that the note in suit was paid by Fountain, as pleaded by him.

We are earnestly urged by counsel for appellant to reverse the trial court's judgment on this issue of fact, upon the ground that the trial court's finding was so against the overwhelming weight of the evidence that it is manifestly wrong, etc. We cannot agree with this contention, and must overrule the assignment. The issue of fact in this case was nothing more than any other ordinary issue of fact before the trial court, and, with the witnesses before him, it is evident that he believed the evidence of Fountain to be true, corroborated as far as he was by the letter from the bank, and the trial court's finding on that issue is conclusive upon us. As said by Chief Justice Brown in Railway Co. v. Gray, 105 Tex. 42, 143 S. W. 606. "There is much in looking at the man."

All assignments of error are overruled, and the judgment of the trial court is affirmed.