**MOORE et al. v. FOLLETT et al. (No. 9154.)**

Court of Civil Appeals of Texas. Galveston.
Nov. 15, 1928.

Rehearing Denied Dec. 21, 1928.

John B. Warren, of Houston, and J. T. Loggins, of Angleton, for appellants.

D. Edward Greer and Jno. E. Green, Jr., both of Houston, Styles & Erickson, of Bay City, Louis J. Wilson and Follett & Evans, all of Angleton, and Harry Holmes and Peveril O. Settle, both of Houston, for appellees.

GRAVES, J. Appellants challenge the correctness of a judgment rendered by the trial court, sitting without a jury's aid, vesting, as against themselves, in the appellees—according to their severally determined interests—the title and possession of all the Samuel Moore 100 acres of land in the John McNeel league in Brazoria county, except the surface rights in an undivided one-half of the 80 acres remaining out of the 100 after what was known as the Irene Moore 20 acres had been deducted therefrom.

In doing so, they attack, as unwarranted under the law and evidence, these findings and conclusions of the learned trial judge:

"Findings of Fact.

"1. This suit was originally instituted by Lewis H. Follett June 28, 1926, against the defendants Colonel Moore, Lavinia Moore and others to recover a certain 80 acre tract of land in the John McNeel League, Brazoria County, Texas. The defendants Colonel Moore and Lavinia Moore, filed their original answer and cross-action on the 9th day of August, 1926, and in the cross-action sought to recover of and from all their co-defendants and the plaintiff a certain 100 acre tract of land in the John McNeel League, known as the Samuel Moore 100 acres which includes the said 80 acre tract of land sued for by the plaintiff. Thereafter, on June 6, 1927, the plaintiff Lewis H. Follett, joined by all the defendants who intervened as plaintiffs, being all the defendants except the Roxana Petroleum Corporation and Colonel Moore and wife, Lavinia Moore, and John B. Warren, filed their first amended original petition against defendants Colonel Moore and Lavinia Moore for the 100 acres of land described in the cross-action filed by Colonel Moore and wife, Lavinia Moore; and thereafter, on June 20, 1927, the defendants Colonel Moore and wife filed their first amended original answer and cross-action, in which they sought to recover as against all of the parties plaintiff and the Roxana Petroleum Corporation the said 100 acres of land, known as the Samuel Moore 100 acres in the John McNeel League, in Brazoria County, Texas.

"2. I find that the government granted or patented to John McNeel the John McNeel League, in Brazoria County, Texas, which includes the land in controversy, August 3, 1824, and that there is no dispute but that the title to 100 acres of the said league passed by mesne conveyances to one Mahala McNeel on or prior to November 9, 1880, and that Mahala McNeel conveyed said 100 acres of land to Samuel Moore November 9, 1880. This 100 acres of land is known as the Samuel Moore 100 acres, and constituted his homestead at his death.

"3. Samuel Moore was married twice. By his first marriage there were four children, two of whom pre-deceased Samuel Moore, intestate and without issue. His other two children, Colonel Moore and Hattie Moore, survived him. Samuel Moore's first wife died intestate leaving surviving her as her only heirs, her husband, Samuel Moore, and the two children, Colonel Moore and Hattie Moore.

"4. Samuel Moore, after the death of his first wife, married his second wife, Irene Moore, and to this union no children were born.

"5. Samuel Moore died sometime during the year 1894, or during the early part of 1895, without having disposed of the 100 acres of land in controversy, leaving surviving him as his heirs, and only heirs, his second wife, Irene Moore, and the two children by his first marriage, Colonel Moore and Hattie Moore.

"6. On January 14, 1925, Irene Moore, Hattie Moore, Colonel Moore and his wife, Lavinia Moore, executed a partition deed, which deed was correctly read to the said Irene Moore, Hattie Moore, Colonel Moore and wife, Lavinia Moore, and was fully understood by them at the time of its execution, and there was no fraud or mistake inducing its execution. The said deed was correctly read to the said Lavinia Moore privily and apart from her husband, and the said Lavinia Moore fully understood the said deed and

what it conveyed, and there was no fraud or mistake inducing its execution on her part. The deed was properly executed, acknowledged and certified to by the officer taking the acknowledgment. The Notary's certificate or certificates attached to said deed in each instance truthfully and correctly recite the facts. In said deed Hattie Moore, Colonel Moore and his wife, Lavinia Moore, conveyed to Irene Moore a specific 20 acres of said 100 acres, and Irene Moore conveyed to Colonel Moore, Lavinia Moore and Hattie Moore the remaining 80 acres of said 100 acres.

"7. *As to the Irene Moore 20 Acres:* Within a year after the execution of the partition deed, Irene Moore or one of her two children Isaiah Brown or Frank Bivens, built a house on the 20 acre tract and Irene Moore moved into that house on the 20 acres with Isaiah Brown, her son; took pedal possession of the 20 acres, lived thereon, cultivated it each and every year, paid all taxes thereon and claimed the same as her own until her death.

"8. Irene Moore died intestate, in possession of the 20 acres, during the year 1914. She left surviving her as her heirs and only heirs her two sons, Isaiah Brown, who was married to Bertha Brown, and Frank Bivens, who was married to Jane Bivens. After the death of his mother, Isaiah Brown, who lived upon this 20 acres of land with his mother, continued living upon the said 20 acres, cultivated it each and every year until his death in the year 1922. Isaiah Brown left no surviving children of their issue, but left surviving him as his only heir his wife, Bertha Brown.

"9. Frank Bivens, who had cultivated the said 20 acres of land jointly with his brother, Isaiah Brown, continued in possession thereof until his death in the year 1924. The said Isaiah Brown and Frank Bivens, the only two children of Irene Moore, after the death of their mother, cultivated the said 20 acres of land each and every year until their respective deaths. Irene Moore and her said two sons paid all taxes, before same became delinquent, on this 20 acres of land from and after the year 1895, to their said respective deaths, claiming the same as their own.

"10. Frank Bivens died intestate in the year 1924, leaving surviving him as his only heirs his wife, Jane Bivens, and the following children: Sam Bivens, General Bivens, and Joseph Bivens, boys; Irene Bivens, a girl, Malindy Bivens, a girl, who married Arthur Randon; Spencer Bivens, a boy; Morgan Bivens, a boy; Emily Bivens, a girl, who married Jerry Smith; John Bivens, a boy; Patsy Bivens, and Hannah Bivens, girls; and L. Q. Bivens, a girl.

"11. After the death of Isaiah Brown and Frank Bivens, their surviving wives and the children of Frank Bivens, claimed this 20 acres of land as their own until they made the respective conveyances to the plaintiffs in

this case, or those under whom the plaintiffs claim.

"12. Colonel Moore and wife had no possession whatever of the 20 acres of land after 1895 until after the year 1924.

"13. I find that by deeds dated August 15, 1925, August 20, 1925, August 31, 1925, September 2, 1925, October 10, 1925, and October 28, 1925, Bertha Brown, Jane Bivens and the children of Frank Bivens executed their respective deeds conveying to the plaintiff and /or intervenor Lewis H. Follett and J. S. Montgomery, in this suit, all their interests in said 20 acres of land.

"14. *As to the Hattie Moore 40 Acre Interest:* After the execution of the partition deed January 14, 1895, Colonel Moore and wife Lavinia Moore, and his sister, Hattie Moore, continued to live upon the remaining 80 acres, and in December of the year 1898, there was born to Hattie Moore a son named Rivers Terry. Hattie Moore was thereafter absent from this place for short intervals and prior to September 8, 1900. After the last mentioned date, the said Hattie Moore and baby, Rivers Terry, moved to Galveston, Texas. After some couple of years Hattie Moore sent the baby, Rivers Terry, to live with her brother, Colonel Moore, and his wife, Lavinia Moore. During the year 1906, Hattie Moore returned to the 80 acres of land in controversy, and there died intestate, during that year, leaving surviving her as her heir and only heir her only child, Rivers Terry. At the date of the death of his mother, Rivers Terry was living with Colonel Moore. After the death of his mother, Rivers Terry continued to live with Colonel Moore and Lavinia Moore in joint possession of the 80 acres until he was seventeen or eighteen years old, when he left, but thereafter returned for short intermittent periods.

"15. Hattie Moore claimed her interest in the 80 acres until her death in 1906, and thereafter Rivers Terry claimed the interest of his mother. Hattie Moore did not convey or purport to convey her interest, or any part thereof, in the 80 acres of land to Colonel Moore or anyone else, and she did not make a parol sale or gift, or attempt to make a parol sale or gift thereof to Colonel Moore or anyone else. Hattie Moore, during her lifetime, did not receive any rents or revenues from the said 80 acres from Colonel Moore or anyone else, and Rivers Terry has not received from Colonel Moore, or anyone else, any rents or revenues from his interest in the said 80 acres.

"16. Colonel Moore and Lavinia Moore required Rivers Terry to begin work at a very early and tender age, and took and utilized for their own use and benefit the results, products, and revenues of his labors until he left home when seventeen or eighteen years of age.

"17. During the time Rivers Terry lived with Colonel Moore, Colonel Moore stated,

on several occasions, to Rivers Terry, after the death of Hattie Moore, that he, Rivers Terry, had an interest in the said 80 acre tract, and that subsequent to the time that Rivers Terry left such place, Colonel Moore stated to him several times that he, Rivers Terry, had an interest in said 80 acres. Colonel Moore never at any time stated or claimed to Hattie Moore that he was claiming her half of the 80 acres, nor to Rivers Terry that he, Rivers Terry, did not have an interest in said 80 acres, or that he, Colonel Moore, was claiming more than an undivided one-half (½) of said 80 acres, until after the institution of this suit; and if Colonel Moore was claiming more than an undivided one-half of the 80 acres, neither Hattie Moore nor Rivers Terry had any notice of such claim. The possession of Colonel Moore and Lavinia Moore of said land was never adverse to the title of Hattie Moore and/or Rivers Terry.

"18. Colonel Moore and wife made no improvements upon the 80 acres after the year 1900 and during the life of Hattie Moore, and he made no improvements upon said 80 acres for more than ten years after the date of the death of Hattie Moore, and there was no change in his possession after the year 1900 and during the life of Hattie Moore, and no change in his possession for more than ten years after the date of the death of Hattie Moore.

"19. Colonel Moore, in the presence of his wife, Lavinia Moore, and another, stated to the plaintiff, Lewis H. Follett, prior to August 18, 1925, that Rivers Terry had an interest in the 80 acres and furnished said Follett with Rivers Terry's address, the said Follett advising them that he intended to try to purchase from Rivers Terry all or a part of Rivers Terry's mineral interest in said land, and relying upon said statements made by Colonel Moore that he, Rivers Terry, had an interest in said land, Lewis H. Follett purchased from Rivers Terry all his, Rivers Terry's, interest in the minerals in and under the said 80 acre tract of land for himself and others in the name of G. A. Brandt, paying a valuable consideration therefor, on August 18, 1925; and therafter, on September 22, 1925, Lewis H. Follett purchased from Rivers Terry and wife their remaining interest in the said 80 acres of land, paying a valuable consideration therefor; and thereafter, on December 19, 1925, G. A. Brandt conveyed to Lewis H. Follett all his interest in the minerals in said 80 acre tract of land. Rivers Terry was born in December, 1898, and he is now married to Edna Terry.

"20. Lewis H. Follett executed deeds to the Tidewater Oil Company of Arizona and The Southern Company for the respective interests specified in such deeds, and such purchasers paid value therefor.

"21. *As to the Colonel Moore 40 Acre Interest*: On October 24, 1925, Colonel Moore and wife Lavinia Moore, executed a deed to W. W. Wilkinson, conveying the rights and interests therein specified, and such deed was correctly read to Colonel Moore and was fully understood by the said Colonel Moore at the time of its execution by him, and there was no fraud or mistake inducing its execution. The said deed was then correctly read to the said Lavinia Moore privily and apart from her husband, and the said Lavinia Moore fully understood the said deed and what it conveyed, and there was no fraud or mistake inducing its execution on her part. The deed was properly executed, acknowledged, and certified to by the officer taking the acknowledgment.

"22. On December 9, 1925, Colonel Moore and wife Lavinia Moore, executed a deed to R. J. Sisk, conveying the rights and interests therein specified, and such deed was correctly read to Colonel Moore and was fully understood by the said Colonel Moore at the time of its execution by him, and there was no fraud or mistake inducing its execution on his part. The said deed was then correctly read to his wife, the said Lavinia Moore, privily and apart from her husband, Colonel Moore, and the said Lavinia Moore fully understood the said deed and what it conveyed. There was no fraud or mistake inducing its execution on her part, and the deed was properly executed, acknowledged, and certified to by the officer taking the acknowledgment.

"23. In the conveyance from Colonel Moore and wife to Wilkinson and in the conveyance from Colonel Moore and wife to Sisk, the Notary in each instance, correctly read the instrument to the grantors and fully explained it to Colonel Moore and wife, Lavinia Moore, and, in each instance, Lavinia Moore was examined separately and apart from her husband, and the deed in each instance was again read and explained to her, and the Notary's certificate, in each instance, truthfully and correctly recites the facts.

"24. W. W. Wilkinson and R. J. Sisk, respectively, on December 1, 1925, and December 18, 1925, executed deeds to Lewis H. Follett for the certain interest in the minerals therein specified, and Lewis H. Follett purchased the same, relying upon the record and the truth of the statements contained in the certificates of the respective notaries, without knowledge of any claimed defects, and he paid a valuable consideration for each of said conveyances.

"25. The other intervening plaintiffs herein acquired interests by valid conveyances introduced in evidence from the holders of the Irene Moore title, the Rivers Terry title, and the Colonel Moore title.

"26. That during the pendency of this cause The Southern Company conveyed its interest to G. T. Lee and C. M. Frost.

"27. After the execution of the deeds to W. W. Wilkinson and R. J. Sisk, Colonel Moore and wife, Lavinia Moore, executed a deed to John B. Warren for a part of the

minerals in and under the land in controversy herein.

"28. Roxana Petroleum Corporation holds mineral leases upon all lands in controversy in this suit, which respective leases were executed prior to the filing of this suit and are in evidence herein, and Roxana Petroleum Corporation was a party to this cause as a defendant on cross-action of Colonel Moore and wife, Lavinia Moore, and John B. Warren, and as a plaintiff on cross-action against Colonel Moore and wife, Lavinia Moore, and John B. Warren, but during the trial of this cause such cross-actions were dismissed and Roxana Petroleum Corporation is no longer a party hereto, but the rights of plaintiff and intervening plaintiffs and the intervener Will Martin are subject to whatever rights, if any, the Roxana Petroleum Corporation has under such leases, but plaintiff, intervening plaintiffs and the intervener Will Martin are entitled to the rents and royalties thereunder.

### "Conclusions of Law.

"From the foregoing facts, I concluded, as a matter of law, that:

"(1) The conveyance from Colonel Moore and Hattie Moore to Irene Moore vested her with the title to the 20 acres of land described therein.

"(2) In addition to the record title, Irene Moore and those claiming through her, are vested with the title to said 20 acres by virtue of the three (3), five (5), and ten (10) year statutes of limitation.

"(3) The title of Irene Moore and her heirs has passed to the plaintiffs herein in accordance with their respective conveyances therefor.

"(4) Hattie Moore, and after her death, Rivers Terry, was vested with the title to an undivided one-half interest in the remaining 80 acres out of the said 100 acre tract. That her undivided one-half interest is now vested in plaintiffs herein, in accordance with the respective conveyances therefor.

"(5) Colonel Moore was vested with the title to the other undivided one-half interest in said 80 acres out of the said 100 acre tract. The conveyances from him have vested the title to all the minerals in and under, or that may be produced from an undivided forty acre interest in and to 80 acres, together with all the rentals and royalties accruing under the lease to Roxana Petroleum Corporation, in the plaintiffs herein, in accordance with the respective deeds therefor.

"(6) John B. Warren took no title to any part of said property under his conveyance from Colonel Moore and wife, Lavinia Moore, because they had previously conveyed all of their interest in the minerals therein and thereunder.

"(7) Plaintiffs are entitled to recover herein the 20 acres of land that was conveyed to Irene Moore and the undivided one-half interest in the remaining 80 acres out of said 100 acre tract, and all the oil, gas, and other minerals in and under, and that may be produced from the undivided forty acre interest in and to said 80 acres, together with the rentals and royalties accruing under the lease from Colonel Moore and wife to the Roxana Petroleum Corporation, which is in evidence in this cause, the interests of plaintiffs being in accordance with their respective conveyances in evidence herein; and the balance of the undivided one-half of said 80 acres is owned by Colonel Moore and wife, Lavinia Moore.

"(8) Colonel Moore and wife, Lavinia Moore, are not entitled to the relief sought in their cross-action, except for the interest above set out."

■ 1. There was no error in the court's refusal to sustain appellants' objections, either concerning the making of Lavinia Moore a party at all, or as permitting the appellees to allege a joint ownership in themselves, or as to the trial of the title to both the 80 and 20 acre tracts in the one action under such a state of the pleadings, because: First, Lavinia herself claimed an interest in the entire 100 acres involved by virtue of long occupancy, as well as by gift from Hattie Moore in consideration of rearing her boy; and, second, appellants Moore first put the 20 acres in controversy, along with only the 80 acres originally sought to be recovered by appellee Follett, by affirmatively seeking the recovery of the whole 100 acres against all their antagonists jointly in their original answer and cross-action, which position, after this initial injection had been followed by the answering claims to different interests in it by various ones of the appellees, they reiterated in an amended pleading of the same sort that their coappellant Warren adopted.

In any event, the whole matter was one within the sound discretion of the trial court, and no indication of abuse appears.

■ 2. It is next asserted that the undisputed evidence, or at any rate the overwhelming weight of it, shows that Colonel and Lavinia Moore, about 1900, made a parol purchase from Hattie Moore of her undivided 40-acre interest in the 80 acres, in consideration of their agreement then made to rear her infant son, Rivers Terry, which transaction they fully carried out upon their part, and in consequence acquired a perfect title to that interest in equity and under limitation; but, after a careful study of the statement of facts, we are unable to agree that such is the state of the evidence, concluding rather that the able trial court's contrary findings in this respect are amply supported. It is true that Colonel Moore—the only witness as to such alleged transaction—swore without direct contradiction that about the time specified his sister, Hattie Moore, verbally gave or sold him her half interest in the 80 acres to rear her small boy for her, but he was an interested witness, and, in

view of the impeaching circumstances referred to in his quoted findings, as well as many others appearing in the record, it was the privilege of the trial judge to disbelieve him. Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447; Trinity Gravel Co. v. Cranke (Tex. Com. App.) 282 S. W. 801; Chapman v. Fountain (Tex. Civ. App.) 261 S. W. 233.

■ 3. The attack made upon the mineral deeds from Colonel and Lavinia Moore to Wilkinson and Sisk as being void on the ground that, the property being then their homestead, the notary did not explain them to her as required by law in taking hei acknowledgment thereto, as well as that upon the trial court's conclusions as to the interests that passed under these instruments, are both overruled as being without merit. Instead of the evidence being undisputed that the requirements of the law were not complied with in the taking of these acknowledgments, as appellants' brief asserts, there plainly was such support for the findings of the trial court the other way as to leave this court without authority to state different ones.

■ Nor did the court misconstrue them in holding that these conveyances together passed all the minerals under the undivided 40 acres inherited by Colonel Moore from his parents out of the 80 acres upon which he was then living, because both instruments plainly so declare in referring back to the lease he had previously made of the same property to the Roxana Petroleum Corporation, which expressly so described it.

■ 4. Objection is made to our consideration of the complaint against the exclusion of Lavinia Moore's testimony to the effect that Colonel Moore always told Rivers Terry and herself that "nobody had any claim on that land but him," because the bill of exceptions fails to show the ground of objection made at the time; the record verifies the point thus made, hence the proposition points out no error. District Court Rule 58; Progressive Lumber Co. v. Marshall & E. T. R. Co., 106 Tex. 16, 155 S. W. 175; Carlton v. Conkrite (Tex. Civ. App.) 249 S. W. 522; Mercedes Produce Co. v. Roody (Tex. Civ. App.) 249 S. W. 249.

■ 5. Colonel Moore's proffered testimony to the effect that he "had told his wife, Lavinia, that Hattie Moore had told him they could have her interest in the land if they would rear Rivers Terry," being clearly hearsay and self-serving, was properly excluded by the court below on that objection being made to it. Daggett v. Farmers' Nat. Bank (Tex. Civ. App.) 259 S. W. 198; Farmers' National Bank of Stephenville v. Daggett (Tex. Com. App.) 2 S.W.(2d) 834; Leahy v. Timon, 110 Tex. 73, 215 S. W. 951; Salvini v. Salvini (Tex. Civ. App.) 2 S.W.(2d) 964.

■ 6. The presentment against the admission of Jane Bivens' testimony that she knew Isaiah Brown and his first wife had been divorced, on the ground that it was hearsay and not the best evidence, cannot be sustained; she swore that she knew the fact of her own knowledge, had seen the decree granting it, and "it is a matter of public history that he was divorced, and everybody here knows it." The trial judge, by a personal interrogation of her, satisfied himself that her knowledge of the matter was first-hand.

■ 7. There but remain for consideration the propositions relating to the Irene Moore 20 acres, Nos. 4, 5, and 6. In substantial effect these are: First, that a mistake was shown by the undisputed evidence to have been made in the drafting of the partition deed of January 14, 1895, whereby it was made to convey the fee-simple title to the 20 acres to Irene Moore, when only a life estate therein had been intended; second, appellants' plea of limitation of ten years as to this land should have been sustained, the undisputed evidence showing that they had for a longer time been in peaceable and adverse possession of it under a claim that they owned it, burdened only with a life estate in Irene Moore; and, third, the undisputed evidence having shown that Irene Moore never paid the purchase money, to secure which her vendors, Colonel and Hattie Moore, had reserved in the deed the superior title to the 20 acres in themselves, and appellants having taken possession of it on her death in 1915, neither her possession while living nor that subsequently of her heirs, who all had actual and constructive knowledge of appellants' rights and were not innocent holders, could be deemed adverse to appellants.

Here again the quoted findings contravene; it is futile as against them, unless there was a lack of supporting evidence, to yet insist that Colonel and Lavinia Moore in the partition deed of 1895 really only made an executory contract for a life estate interest with Irene Moore that she never carried out, and that in consequence, although she thereafter admittedly appropriated and lived upon the segregated 20 acres until her death, her possession of it never became adverse to her grantors. Because of the earnestness with which the able counsel for appellants urges these contentions, however, this court has with painstaking care examined the evidence upon which the court below acted. It amply supports, if it does not compel, the findings so plainly stated.

It indisputably shows that this deed passed just what the parties to it mutually intended, that is, the specific 20 acres to Irene Moore and the remaining 80 acres out of the 100 to Colonel and Hattie; that there was no fraud or mistake attending its execution, and whatever became of the small notes therein described, that Irene at once took possession of her 20 acres, which seizure she and her two sons in succession thereafter continuously and uninterruptedly maintained against the world from 1895 until 1924, reg-

ularly paying taxes on it all the while. As the court properly concluded, this gave them both a record and a limitation title to it.

Upon the whole case, it conclusively appears to us that appellants were accorded a fair trial, that they have failed in any material respect to show the commission of any prejudicial error, and that the judgment of the court below should be in all things approved. That order has been entered.

Affirmed.